ALBERT BERDAN AND CLYDE D. RICHARDSON, PROSECU-
TORS–RESPONDENTS, v. CITY OF PATERSON, BOARD OF
PUBLIC WORKS, BOARD OF ADJUSTMENT, WILLIAM
BYRNES, BUILDING INSPECTOR, AND ANCO PRODUCTS
CORPORATION, RESPONDENTS–APPELLANTS.

Argued November 15, 1948—Decided December 13, 1948.

*Mr. Aaron Z. Schomer* argued the cause for the respondents-appellants (*Mr. George Surosky,* attorney for the City of Paterson, *et al.; Mr. Morris Pashman,* attorney for Anco Products Corporation).

*Mr. Charles Halsted* argued the cause for the prosecutors-respondents.

The opinion of the court was delivered by

WACHENFELD, J. The Board of Public Works of the City of Paterson, acting on the recommendation of the Board of Adjustment of the city, permitted Anco Products Corporation to use premises in a residential zone for heavy industrial purposes for a limited period of time. Appeal is taken from a decision of the former Supreme Court reversing the action by both Boards.

Anco Products Corporation is lessee of premises in a "B" Residence zone at 911–927 East 23rd Street, Paterson, New

Jersey, under a five-year lease commencing in September 1944. It originally used the premises to make "inverters" for airplanes and in August 1945, upon the cessation of hostilities, changed to the assembly of small motors (one-eighth to one-third horsepower) used on sewing machines and oil burners.

In February 1947 large presses were brought upon the premises which operated at sixty to eighty strokes a minute. Their noise was audible beyond the premises, disturbing the immediate residents. The plant operated from early morning until after midnight and infrequently on Sundays.

A month after the installation of these presses the Building Department of Paterson notified Anco that it did not have a certificate of occupancy for the use of the premises and advised it to obtain one. The Building Inspector refused to issue the certificate and Anco then filed an application with the Board of Adjustment for a "variance" from the zoning ordinance of the city on the basis the activity was light manufacturing in nature, a lawful, pre-existing non-conforming use. The Board held a hearing at which it was shown there were lathes, drill presses, punch presses and other machines used in the manufacture, processing and assembly of metal parts for complete motors. One drill press alone weighed approximately twelve tons. Numerous property owners in the immediate neighborhood, by petition and testimony, objected to the application on the basis that noise from the plant was very disturbing and soot from the oil-burning furnace, obnoxious.

On July 2, 1947 the Board determined the objections were justified and that "The existing use is a heavy industrial one and its proper classification is a machine shop," while the maximum degree of non-conformity under which the premises have been operated since the enactment of the zoning ordinance was "light industrial." On the other hand, the Board pointed out that the lease was executed during war conditions and the operations were undertaken "at the instigation of the United States Signal Corps." It noted Anco would continue to be liable for the rent regardless of occupancy and that the company employs two hundred or more persons who are dependent upon this business for their eco-

nomic welfare. Although concluding, "If this Board were to grant this variance its action would be unlawful * * * because the use proposed is a prohibited one in that zone," it nevertheless recommended to the Board of Public Works that the existing use be allowed for the duration of the lease upon the condition that all noises would be reduced so as to be inaudible beyond the premises or operation limited to six days a week, eight a. m. to seven p. m., and that smoke from the oil-burning furnace be eliminated.

The Board of Public Works at first voted not to concur in that recommendation but upon rehearing, despite additional testimony in support of the findings of the Board of Adjustment and after a personal inspection of the property, voted to approve it. On *certiorari* to the former Supreme Court the determinations of the Board of Adjustment and Board of Public Works were reversed.

Since the enactment of the local zoning ordinance and up to the occupancy by Anco, these premises have been continuously used for light industrial purposes and therefore exempt from the zoning restrictions limiting the district to residential use. *R. S.* 40:55–48. It was on that basis that appellant applied to the Board of Adjustment for a determination that its activity is light manufacturing in nature and therefore permissible as a continuance of the pre-existing non-conforming use. The company did not contest the conclusion the previous uses were light industrial and no appeal was made for a variance pursuant to *R. S.* 40:55–39 based on unnecessary hardship as the statute then provided.

■ There is ample evidence to support the Board of Adjustment's determination that the prevailing use to which appellant seeks to devote the premises is "heavy industrial" and to be classified as a "machine shop." Previously the premises had been used as a textile plant, yarn cleaning house, aircraft body factory and a rayon plant, which the Board characterized as light industrial. That conclusion is not attacked by the appellant. The proposed use enlarges and substantially differs from the preceding non-conforming uses. As such, the immunity previously allowed cannot continue.

*Kensington Realty Holding Corp. v. Jersey City,* 118 *N. J. L.* 114 *(Sup. Ct.* 1937), aff'd 119 *N. J. L.* 338 *(E. & A.* 1937); *Berry v. Recorder's Court of West Orange,* 124 *N. J. L.* 385 *(Sup. Ct.* 1940), aff'd 125 *N. J. L.* 273 *(E. & A.* 1940); *National Lumber Products Co. v. Ponzio,* 133 *N. J. L.* 95 *(Sup. Ct.* 1945); *Simone v. Peters,* 135 *N. J. L.* 495 *(Sup. Ct.* 1947).

 It is argued that the action of the Board of Adjustment by imposing certain conditions on the operation of the plant restricted the use to light manufacturing. The conditions imposed did not change the nature of the operation of the plant but sought to eliminate its obnoxious noises and smoke. In fact, the noise was not sufficiently reduced so it became necessary to confine working hours to those designated by the Board. The reduction of working hours did not change the character of the work performed; it merely rendered its effects less disturbing to the neighboring residents. The mere fact that a prohibited use is no more objectionable than other uses in the district does not justify its allowance and municipal sanction allowed on that basis is arbitrary and capricious. See *Lynch v. Hillsdale,* 136 *N. J. L.* 129 *(Sup. Ct.* 1947), aff'd 137 *N. J. L.* 280 *(E. & A.* 1948).

 Neither can the allowance of the activity herein concerned be justified as being only temporary, limited to the remainder of the five-year period of the lease. Temporary expediency in itself cannot be the reason for disregarding zoning statutes. The purpose of the restrictions applies to temporary as well as permanent uses. As stated in *Lynch v. Hillsdale,* supra:

"A use which is not the proper subject of a variance lasting and inviolable in character is not permissible for a limited period."

 The determinations below were clearly without foundation in the policy of the statute. The fact that Anco commenced operations on the premises under war conditions does not justify present non-conformance with the zoning ordinance. Hostilities had long since ceased when the heavy machinery causing the objections from the surrounding neighborhood was installed in 1947. At the same time, Anco had changed its production from war work to the manufacture of products

for civilian use. The prohibited activity in no way relates to the national emergency.

■ The obligation under the lease to pay rent regardless of whether the tenant occupies the premises is no basis for allowing the corporation to conduct heavy manufacturing at this location. The welfare of the community will not be sacrificed for the purpose of permitting the most profitable use of premises. That a non-conforming use is more profitable to the landowner is *per se* insufficient reason for disregarding zoning restrictions. *Brandon v. Montclair*, 124 *N. J. L.* 135 *(Sup. Ct.* 1940), aff'd 125 *N. J. L.* 367 *(E. & A.* 1940); *Scaduto v. Bloomfield*, 127 *N. J. L.* 1 *(Sup. Ct.* 1941).

■ Equally untenable is the influence upon the Board of Adjustment that two hundred persons or more are employed by and dependent upon the appellant company. "That business is the lifeblood of any community and necessary to its economic and material welfare and development" is not questioned, but one aspect of community life should not be allowed at the expense of others. The essence of zoning is to provide a balanced and well-ordered scheme for all activity deemed essential to the particular municipality.

■ The point is raised the court below could not act in this matter because the return of the writ of *certiorari* did not contain a full transcript of the testimony before both municipal boards. The sole basis for this argument is the notation in the record that a court stenographer was sworn in at the hearings before the Board of Adjustment. While the record is not set forth verbatim, the gist of apparently all testimony is included in summary fashion. Proper certificates of the City Clerk and Clerk of the Board of Adjustment state the records returned constitute the entire proceedings concerning this subject matter. No contention is made that any relevant testimony has been omitted from the return. It cannot therefore be said the record was inadequate.

The judgment of the court below reversing the determinations of the Board of Public Works and Board of Adjustment is accordingly affirmed.

*For affirmance:* Chief Justice VANDERBILT and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal:* None.