G. FREDERICK REXON, TRADING AS PRECISION PARTS CO., PLAINTIFF-APPELLANT, v. BOARD OF ADJUSTMENT OF THE BOROUGH OF HADDONFIELD, DEFENDANT-RESPONDENT.

G. FREDERICK REXON, TRADING AS PRECISION PARTS CO., PLAINTIFF-APPELLANT, v. BOROUGH OF HADDONFIELD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, CHARLES N. BOULTON, JUDGE OF THE MUNICIPAL COURT OF THE BOROUGH OF HADDONFIELD, AND WILLIAM H. PADGETT, CHIEF OF POLICE OF THE BOROUGH OF HADDONFIELD, DEFENDANTS-RESPONDENTS.

Argued May 19, 1952—Decided June 9, 1952.

*Mr. Gene R. Mariano* argued the cause for appellant.

*Mr. Walter S. Keown* argued the cause for respondent (*Mr. Frank C. Propert,* attorney).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. Of our own motion we certified this appeal of the plaintiff to the Appellate Division from a judgment entered in defendants' favor in the Law Division in two actions brought by plaintiff, one to set aside the determination of the local board of adjustment denying him a variance, and the other to have the zoning ordinance adjudged invalid as applied to his property.

Plaintiff's lot, approximately 100 feet square, lies in the center of a square block in the Borough of Haddonfield. It is surrounded by properties abutting the streets which bound the block—Clement Street on the north, Mechanic Street on the east, Tanner Street on the west and Kings Highway East on the south. The piece has been detached since 1927 from the lands abutting on the streets. At that time and when plaintiff purchased in 1948 the only access to the property was from Kings Highway East through a driveway between two structures facing that thoroughfare. Plaintiff has since bought a home on Tanner Street alongside which he has constructed a driveway which provides ingress to the property from Tanner Street.

Haddonfield is a residential community. There is no significant industrial activity in the borough. Business enterprises are almost entirely confined to retail and mercantile establishments. The neighborhood in which plaintiff's lot is located is residential. The square block in which the piece lies is zoned, however, for retail and mercantile uses

in approximately two-thirds of its area north from Kings Highway East, including all of the lots abutting on that thoroughfare, and for two-thirds of the distances along Mechanic and Tanner Streets north toward Clement Street which, with the rest of Mechanic and Tanner Streets, is zoned for residential use. The single exception is a lot of Atlas Instrument Company with a frontage of 66 feet on Tanner Street near the corner of Kings Highway East, which by amending ordinance adopted in 1944 was zoned to permit Atlas to operate a small machine shop thereon, as it has done since that time.

When the zoning ordinance was adopted in 1939 there was a dairy with stable and outbuildings on the plaintiff's lot. Ownership passed through several hands until the piece was acquired by Atlas Instrument Company in 1944 which erected in one corner thereof a 30- by 70-foot one-story cement block building which the company used in connection with its machine shop business on the Tanner Street lot. Plaintiff was an employee of Atlas Instrument Company. He bought the lot from his employer to start his own machine shop business. In 1950 he tore down the barn and remaining outbuildings and enlarged the cement block building with an addition approximately 60 feet by 45 feet in dimensions. He installed considerable machinery including grinders, milling machines, lathes, saws and two fixed arc welding machines. His business has grown substantially, employing at the time of the hearings before the local board some 40 persons with a weekly pay roll between $3,000 and $3,500. The Law Division found that "at the present time the business which began as a small machine shop has become a factory." Plaintiff is now manufacturing tools and dies in addition to supplying machine shop service.

The new construction was done under a building permit issued by the borough clerk on order of the building inspector but without reference of the application to the board of adjustment or to the governing body of the borough. Plaintiff, however, did not contend below, nor does he here, that

because he enlarged his plant in reliance on the building permit the borough is estopped to require his compliance with the provisions of the zoning ordinance. *Cf. Kurowski v. Board of Adjustment of Bayonne,* 11 *N. J. Super.* 433 (*App. Div.* 1951).

Plaintiff's argument is that it was the duty of the local board to grant him a variance or that in any event the application of the zoning ordinance to his property works an arbitrary and capricious interference with his rights of enjoyment thereof and amounts to a practical confiscation of it. He relies upon the same proof as supporting the two alternative bases for relief, namely, that the difficulties of public access to the piece make "the land in question * * * so peculiarly situated as to make it unique," "it is circumscribed and bounded by properties on all four sides and it has no access to any of the streets except by a 10-foot public alley on one side and a 10-foot private alley on another side which was purchased by plaintiff." In the circumstances his attack upon the validity of the ordinance as applied to his property necessarily fails if the local board's action denying him a variance is sustained.

By a 1944 amendment to the zoning ordinance it was provided that "Any use or purpose which will create or which is likely in the opinion of the Board of Adjustment to create a nuisance or conditions of hazard, smoke fumes, noise, odor or dust detrimental to the health, safety or general welfare of the community shall not be permitted." There was considerable evidence before the local board that plaintiff's present scale of operations is causing great discomfort and annoyance to householders of the neighborhood both in homes on the abutting lots fronting Clement, Mechanic and Tanner Streets and in other homes of the neighborhood generally. Great noises, brilliant light flashes and the general hubbub incident to an industrial operation of this kind, conducted in this instance for long hours of the day and night, has caused borough citizens loss of sleep, rest and comfort to substantial degree. After extended hearings the local board

denied plaintiff's application for a variance upon findings that·
plaintiff's operations "created a condition disturbing to the
residents" of the neighborhood, "produced loud noises caused
by the pounding of metals and the handling of metallic
materials, and in addition thereto, bright flashings of light
caused by the operation of the electric arc welding machines,"
that "the disturbances and conditions created  *  *  *  was
such as to disturb the rest of the residents and the peaceful
enjoyment of the residents," that "there is no exceptional
narrowness or shallowness, or shape of the particular prem-
ises, or any exceptional applicable conditions or situations,
whereby the strict application of the terms of the Zoning
Ordinance would result in peculiar or ·practical difficulties
to or exceptional or undue hardships upon the petitioner"
and that "no relief can be granted under the petition  *  *  *
without substantial detriment to the public good and without
substantially impairing the intent and purpose of the Zoning
Plan and Zoning Ordinance."

The Legislature has directed that variances under *R. S.*
40:55–39(c), as amended by *L.* 1948, *c.* 305, *p.* 1223, *L.*
1949, *c.* 242, *p.* 779, shall not be had except upon a showing
of undue hardship to the owner upon one or more of the
grounds specified in that subsection and further, both as to
that subsection and generally as to variances and exceptions
under *R. S.* 40:55–39, unless relief can be granted "without
substantial detriment to the public good and will not sub-
stantially impair the intent and purpose of the zone plan
and zoning ordinance." The scope of a local board's authority
under subsection (c) has been considered in several recent
opinions of this court and need not be elaborated upon here.
165 *Augusta Street, Inc., v. Collins,* 9 *N. J.* 259 (1952);
*Leimann v. Board of Adjustment of Cranford,* 9 *N. J.* 336
(1952); *V. F. Zahodiakin, etc., Corp. v. Board of Adjust-
ment of Summit,* 8 *N. J.* 386 (1952); *Home Bldrs. Assn.
of Northern N. J. v. Paramus,* 7 *N. J.* 335 (1951); *Lumund
v. Board of Adjustment of Borough of Rutherford,* 4 *N. J.*
577 (1950).

██ The action of a board of adjustment in denying a variance is presumptively correct and the person assailing the action has the burden to, prove otherwise. *Brandt v. Zoning Board of Adjustment, Mt. Holly Tp.*, 16 *N. J. Super.* 113 (*App. Div.* 1951). On judicial review the proper issue is whether the board acted reasonably upon the showing made before it and its denial will be sustained in the absence of an affirmative showing that it was unreasonable, arbitrary or capricious. *Brandt v. Zoning Board of Adjustment, Mt. Holly Tp., supra; Marrocco v. Board of Adjustment of City of Passaic*, 5 *N. J. Super.* 94 (*App. Div.* 1949), certif. den. 3 *N. J.* 379 (1949). In the instant case the Law Division sustained the local board's action as reasonable in light of the proofs, and we reach the same conclusion after our own examination of the record.

██ Plaintiff premises his claim of undue hardship upon the statutory element of "other extraordinary and exceptional situation or condition of such piece of property," *R. S.* 40 :55–39(c), arguing that because the property is not readily accessible to the public a conclusion of undue hardship upon him is compelled. The condition of limited accessibility has obtained, however, since the property became a detached piece in 1927, many years before the adoption of the zoning ordinance. As the abutting lots surrounding the piece were built upon the value of the piece, even before the adoption of the zoning ordinance, apparently lay largely in its utility as an appendage to one of them. Such was its value to Atlas Instrument Company when it bought the lot in 1944. And there was substantial testimony that the structures upon the lot are adaptable for use by adjoining mercantile establishments. Plaintiff's own expert witness acknowledged that the building thereon "definitely is of such a character it could be used as a storehouse, or a building of similar nature * * * adaptable to any business in that area surrounding that property." The borough's expert witness also testified that "with very little expenditure of money, it could be utilized for a storage building or a warehouse as an adjunct to some

of the businesses on Kings Highway East." We cannot say that in this posture of the proofs the local board's action was unreasonable and arbitrary. A situation or condition of a piece of property is not to be deemed extraordinary and exceptional and to impose undue hardship upon the owner within the intendment of *R. S.* 40:55–39(*c*) if, viewed in the setting of its environment, the property may reasonably be adapted to a permitted use. *Leimann v. Board of Adjustment of Cranford, supra.* We concur with the holding of the Law Division that there was substantial evidence before the local board opposed to plaintiff's contention that the lot has no practical utility except for the purposes of his business. A zoning ordinance does not contravene constitutional limitations merely because the restricted use may not be the most profitable use to which the property can be devoted. *Berdan v. City of Palerson,* 1 *N. J.* 199 (1948).

The fact situation in the instant case is wholly different from that passed upon in *Schaible v. Board of Adjustment of Millburn Township,* 134 *N. J. L.* 473 (*Sup. Ct.* 1946), upon which plaintiff relies. That case arose under subdivision (d) of *R. S.* 40:55–39 and turned upon a finding that "as things now are, prosecutors are deprived of any practical economic use of their property."

Moreover, the *Schaible* case was decided before the amendments of 1948 and 1949 to *R. S.* 40:55–39 introduced the requirement that relief is not to be granted thereunder unless it may be done without substantial detriment to the public good and without substantial impairment of the intent and purpose of the zoning plan. The evidence pointing to a serious threat to the health and well being of the citizens of this residential community from the continuance of plaintiff's factory operation fully supports the local board's finding that a variance could not be granted without substantial detriment to the public good and without substantially impairing the general regulation. True, the Atlas Instrument Company for several years has operated its machine shop on the Tanner Street lot under the 1944 amendment to the

zoning ordinance which sanctioned that use. The municipal action in that regard may have been improper as tantamount to spot zoning, but, so far as appears, the propriety of the action was not challenged and apparently the business has been operated in a manner which has not occasioned complaints by citizens. However, plaintiff can get no comfort from that municipal action even assuming the action was improper. "If that were so, one variation would sustain if it did not compel others, and thus the general regulation would eventually be nullified." *Scaduto v. Bloomfield,* 127 *N. J. L.* 1 (*Sup. Ct.* 1941); *Birkfield Realty Co. v. Board of Com'rs. of Orange,* 12 *N. J. Super.* 192 (*App. Div.* 1951), certif. den. 8 *N. J.* 319 (1951).

The judgment of the Law Division affirming the action of the Board of Adjustment of Haddonfield in Case 183–51 and entering judgment upon plaintiff's complaint in favor of defendants in Case A 184–51 is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN —6.

*For reversal*—None.