22 N.J. Super. 161 (1952)
91 A.2d 597
FRED E. PREYE, ET ALS., PLAINTIFFS-RESPONDENTS,
v.
BOARD OF ADJUSTMENT OF THE TOWNSHIP OF NORTH BERGEN, DEFENDANT AND EDWARD MOTORS, INC., A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 30, 1952.
Decided October 10, 1952.
*164 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Nicholas S. Schloeder argued the cause for the defendant-appellant Edward Motors, Inc. (Messrs. Stone & Weil, attorneys; Mr. Nicholas S. Schloeder, of counsel).
Mr. Otto E. Riemenschneider argued the cause for the plaintiffs-respondents.
The opinion of the court was delivered by GOLDMANN, J.A.D.
Defendant Edward Motors, Inc. appeals from a judgment of the Superior Court, Law Division, reversing and setting aside a determination of the *165 Board of Adjustment of the Township of North Bergen granting it a variance from the township zoning ordinance.
Edward Motors, Inc. conducts an automobile sales and service business at the northeast corner of Hudson County Boulevard and 82nd Street, commonly known as 8200 Hudson Boulevard, in the Township of North Bergen. The building has been used for that purpose for almost 25 years, and by the company since December 1945. The structure is L-shaped; it fronts 50 feet on the boulevard, extends back 125 feet on 82nd Street, and runs 100 feet across the rear, parallel to the boulevard. The sales department is in the front part of the building and the garage in the rear part forming the "L." Cars that are to be serviced are brought into the garage through an entrance on 82nd Street. Edward Motors, Inc. also has a lot directly across the boulevard where it formerly kept its new cars and now keeps rental automobiles and trucks. In 1948 the company purchased three vacant lots in the rear of its building, each measuring 25'x 100'. Together they form the northwest corner of 82nd Street and Fifth Avenue, fronting 75 feet on 82nd Street and 100 feet on the avenue.
Under the zoning ordinance of North Bergen Township, adopted March 28, 1934, both sides of Hudson County Boulevard, running for some distance in each direction from the Edward Motors building, are zoned for business purposes to a depth of 100 feet. The lands in the rear of the business strip on the southeast side of the boulevard and extending to Fifth Avenue are zoned as a Second Residential District, where businesses of any kind, commercial, manufacturing and industrial enterprises, and garages of any kind on vacant lots are forbidden. (It will be observed that the rear 25 feet of the Edward Motors building is located in a Second Residential District, so that this part of the premises constitutes a pre-existing, nonconforming use.) The area between Fifth Avenue and First Avenue to the southeast, extending for three blocks on each side of 82nd Street, is zoned as a First Residential District where apartments for *166 more than two families, as well as the uses prohibited in a Second Residential District, are proscribed.
It appears from the pretrial order that in June 1950 Edward Motors, Inc. applied to the building inspector of North Bergen Township for a permit to construct a garage building on the tract in the rear of 8200 Hudson Boulevard. The permit was refused. On appeal, the board of adjustment granted a variance permitting a garage, but the construction was never undertaken.
Subsequently, on July 18, 1951, the company applied to the building inspector for a permit to grade the vacant tract, construct thereon an amecite hard-top surface, fence in the entire area with a 6 1/2-foot rustic picket fence having a single entrance-exit gate on 82nd Street immediately adjacent to the main building, and to break through the rear wall of the garage in order to provide ready access to the lot. The fenced lot was to be used solely for the parking of passenger cars owned by Edward Motors, Inc. or its customers. The application was rejected by the building inspector and the company thereafter appealed to the township board of adjustment for a variance from the zoning ordinance.
The board held a public hearing on August 8, 1951. Edward Zubalsky, president of the company, appeared on its behalf and represented that the lot would be used for the stated purpose only; that business had increased to such an extent that there were no facilities for parking new cars; that the proposed use would take off the streets cars brought there by customers for repair, and that the lot could not be used for the erection of an apartment building or a private dwelling. He presented a petition, marked in evidence at the trial in the Law Division, signed by 30 "owners of property in the vicinity of two hundred feet" from the vacant land, consenting to and approving of the proposed use. (Eight of the signers subsequently withdrew their approval. Of the remaining 22 signers, 14 are located on the boulevard, seven being more than a block away from the lot; seven reside on Fifth Avenue, but six of these live two or three blocks away *167 from the lot, and one lives a block away on 82nd Street.) Counsel for 17 objectors living in the neighborhood stated that the neighborhood was one of the finest residential districts in North Bergen Township and that the contemplated use would affect both the First and Second Residential Districts.
A further hearing was held before the board of adjustment at its October 24, 1951 meeting. One of the board members having been replaced by a new member since the first hearing, Zubalsky briefly reviewed the proposal for his benefit. He argued that the case was one of hardship since the company would be forced to sell and locate elsewhere if it could not use the property in the manner proposed. Counsel for the objectors pointed out that there was no hardship present, that the applicant was aware of the restrictions when the property was purchased in 1948, and that the zoning scheme should be preserved because the area was one of the few residential districts left in North Bergen.
The board met again on November 14, 1951, with only four members present. What followed after adjournment was extraordinarily informal, for all four then went to the home of the absent member, who was convalescing from a recent operation, and there voted on granting the variance requested by Edward Motors, Inc. The vote was 3 to 2 in favor of the variance. The manner in which the vote was taken is not challenged.
The resolution granting the requested variance was signed on November 20, 1951 by the three members of the board who had voted in favor of the grant. It recited that the proposed parking area was necessary to the applicant in order properly to conduct its business; that the property immediately adjoined an area zoned for business and was close to the heavily-trafficked boulevard; that the proposed use "would be desirable as a safety factor and as an improvement to the surrounding area," and that "after due consideration of the evidence and after an inspection of the property, *168 it is the finding of the Board that the circumstances herein constitute an exceptional situation for the affected property and strict application of the zoning ordinance would result in peculiar and exceptional practical difficulties and an extreme and unnecessary hardship upon said Edward Motors, Inc. and the relief herein granted is without substantial detriment to the public good and will not substantially impair the intent and purposes of the zoning ordinance; * * *." (Italics ours.)
At the time of the adoption of the resolution there was no report on file of the physical inspection allegedly made by the board members. Such a report was filed on February 27, 1952 by the three members who signed the resolution. The two members who voted against granting the variance had in the meantime left the board. The report recites that all the members of the board inspected the property on August 15, 1951 and on October 24, 1951. It further recites that the Edward Motors business was substantial and extensive and the repair shop so overcrowded with automobiles that there was insufficient working space; that the lot in its present state detracts from the appearance of the neighborhood; that the lot had a depth of only 75 feet from Fifth Avenue, whereas all other lots adjoining the property on Fifth Avenue had a depth of 100 feet with private garages in the rear, so that the depth of the premises in question would be insufficient for the usual one- or two-family residence and garage, particularly since the zoning ordinance required that the garage be constructed on the rear of the lot; that it was "unlikely that any residences or apartment house facing 82nd Street would be constructed since it [sic] would immediately adjoin the business operated by Edward Motors and would be close to Hudson Boulevard which is a business area"; that the rear 25 feet of the building used by Edward Motors adjoining the lot is already within the Second Residential Zone and has rear wall windows looking out upon the property; that the construction of the fence proposed by the company would enhance the appearance of the area; and *169 that the proposed parking area would remove from the street cars parked and even double-parked on 82nd Street by the customers of Edward Motors, thus eliminating a traffic problem and hazard.
On December 14, 1951 plaintiffs, 14 in number (seven couples) and residing in the immediate vicinity of the lot, filed their complaint in lieu of certiorari challenging the variance granted by the board of adjustment as a violation of the zoning ordinance and a private nuisance. Both the board and the defendant Edward Motors, Inc. filed answers. The case was pretried on February 1, 1952, and the pretrial order sets out the contention of the parties. The plaintiffs contended that the action of the board of adjustment was arbitrary, capricious and an abuse of discretion; that the board minutes were fatally defective in that they did not describe the conditions which the board found when it inspected the premises; that when the company purchased the property it had knowledge that it was buying in a restricted area; that there was no unnecessary hardship on the defendant, and that the land in question was adaptable for other uses. The defendants contended that the decision of the board was made in the exercise of its sound discretion and for the public good; that it was based upon the reasonableness of the application and to prevent and rectify an unnecessary hardship, and that the decision made was without detriment to the public good and without substantial impairment of the purpose and intent of the zoning ordinance.
The power of a board of adjustment to grant a variance stems directly from R.S. 40:55-39(c), as amended by L. 1948, c. 305, § 6 and L. 1949, c. 242, § 1 (N.J.S.A. 40:55-39(c)):
"Where by reason of exceptional narrowness, shallowness or shape of a specific piece of property at the time of enactment of the regulation, or by reason of exceptional topographic conditions or other extraordinary and exceptional situation or condition of such piece of property, the strict application of any regulation enacted under the act would result in peculiar and exceptional practical difficulties to *170 or exceptional and undue hardship upon, the owner of such property to authorize, upon an appeal relating to such property, a variance from such strict application so as to relieve such difficulties or hardship."
The present authority of a board is somewhat more restricted than it was before the amendment of 1948. N.J.S.A. 40:55-39 concludes with the following significant provision:
"No relief may be granted or action taken under the terms of this section unless such relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance."
In allowing or denying a variance a board of adjustment exercises a function committed by the Zoning Act (N.J.S.A. 40:55-39(c)) to its sound discretion and experienced judgment, controlled by law and reason. Its action may not be set aside by the courts unless there has been an abuse of the delegated legal discretion. Oliva v. City of Garfield, 1 N.J. 184, 189 (1948); Home Builders Ass'n. of Northern New Jersey v. Borough of Paramus, 7 N.J. 335, 343 (1951); 165 Augusta Street, Inc. v. Collins, 9 N.J. 259, 265 (1952); Rexon v. Board of Adjustment of Haddonfield, 10 N.J. 1, 7 (1952). But although a court may not substitute its judgment for that of a board of adjustment within that body's sphere of action, where there is no evidence that the action taken is arbitrary, capricious or unreasonable (Scerbo v. Board of Adjustment of Jersey City, 4 N.J. Super. 409, 415 (App. Div. 1949)), the court does not hesitate to apply the necessary corrective whenever the board's determination is without warrant or support, assessed in the light of the statutory considerations controlling the allowances of variations.
R.S. 40:55-39(c), as amended in 1948 and 1949, has been before our courts on a number of occasions, and was recently construed in 165 Augusta Street, Inc. v. Collins, above where the Supreme Court said (9 N.J. 259, at page 263):
*171 "* * * It is now settled that under subparagraph (c) of R.S. 40:55-39, as amended, in order to support the grant of a variance there must be a finding of unnecessary hardship to the individual landowner. V.F. Zahodiakin, etc., Corp. v. Bd. of Adjustment, Summit, 8 N.J. 386 (1952); Home Builders Ass'n. of Northern N.J. v. Paramus, 7 N.J. 335, 341-342 [, 343] (1951); Lumund v. Bd. of Adjustment of Borough of Rutherford, 4 N.J. 577, [582-583] (1950); Cf. Protomastro v. Bd. of Adjustment of City of Hoboken, 3 N.J. 494, 500, 501 (1959). Compare Monmouth Lumber Company v. Township of Ocean, 9 N.J. 64 [, 77] (1952)."
(To these cases may be added Leimann v. Board of Adjustment of Cranford, 9 N.J. 336, 340 (1952), and Rexon v. Board of Adjustment of Haddonfield, 10 N.J. 1, 6 (1952).) The court perceived no practical difference between the two phrases "undue hardship" and "peculiar and exceptional practical difficulties," as used in N.J.S.A. 40:55-39(c) quoted above. It observed that:
"* * * The former is necessarily inclusive of the latter, for where peculiar and exceptional practical difficulties exist undue hardship also exists. The remainder of the language of amended subparagraph (c) of R.S. 40:55-39 constitutes a legislative declaration of elements of proof of a restrictive nature, a limitation upon the authority of the board of adjustment to grant a variance on the ground of unnecessary hardship. These factors are expressed in two categories: exceptional narrowness, shallowness or shape of a specific property at the time of the enactment of the regulation, or other extraordinary and exceptional situation or condition of such piece of property." (9 N.J. at pages 263-264.)
The undue hardship must inhere in the particular premises for which the variance is claimed. A variance cannot legally be granted for reasons which also apply to other properties in the same neighborhood. A board of adjustment may exercise the discretionary power entrusted to it by the statute in favor of an applicant only where his plight is attributable to circumstances uniquely touching his land as distinguished from conditions that affect the rest of the neighborhood. Lumund v. Board of Adjustment of Rutherford, 6 N.J. Super. 474, 480 (Law Div. 1949); Ibid 4 N.J. 577, 582-583, 584 (1950). Tzeses v. Board of Trustees of *172 South Orange, 22 N.J. Super. 45 (App. Div. 1952). Cf. Ramsbotham v. Board of Public Works of Paterson, 2 N.J. 131, 135 (1949), and 165 Augusta Street, Inc., v. Collins, 9 N.J. 259, 266 (1952) (dissent).
The factors which might legally support the variance here granted by the board of adjustment are totally lacking. The premises in question exhibit no "exceptional narrowness, shallowness or shape," or "exceptional topographic conditions." The lots measure 25' x 100' each, and make up a well-proportioned tract of 75' x 100' fronting on two streets. The three lots, individually and as a unit, are perfectly rectangular. Nothing in the record indicates that this property differs from any other in topography; the photographic exhibits show a flat piece of land, typical of many another city street corner. The owner establishes no "other extraordinary and exceptional situation or condition" whatsoever that is peculiar to its lot, and to it alone. There is nothing that characterizes this corner lot as uniquely circumstanced, in contradistinction to the general conditions in this residentially zoned area.
At the trial the company sought to establish that the corner lot was unsuitable for an apartment or for one- or two-family dwellings. Its real estate expert testified that the lot was too small for a "large scale" apartment; there was "not inducement enough for an investor to put up a small building." Further, the property was unsuitable for dwellings; it was impractical to build houses along Fifth Avenue on 75' depths, particularly in view of the zoning requirements that a private garage be placed on the rear line, at least 25 feet back of the house. The expert also stressed the fact that the presence of the Edward Motors garage adjoining the lot would make it fairly undesirable for any one to invest in an apartment house or dwellings. However, he admitted it was "probable" that the property could be used for an apartment house or dwellings, and then went on to qualify his statement:
*173 "You could get somebody to do it, somebody might do it, but not economically if somebody sat down and analyzed the whole situation, analyzed the total cost; it would not be feasible."
On cross-examination, after repeatedly being asked if there was any physical reason why a house could not be built on the lot, he reluctantly admitted that there was none.
It is clear from the record that the premises could be put to a use conforming to the zoning plan. Even if it be conceded that there might be some difficulty in placing a dwelling and garage on plots facing Fifth Avenue and possessing a 75-foot depth only, no such problem presents itself if the houses were fronted on 82nd Street, where they would enjoy a full 100-foot depth. The entire adjoining residential area has houses on 100-foot depths, with 25-foot or more frontages.
An apartment house of modest size is a definite possibility for this corner lot. In fact, defendant's expert spoke of it as "probable." Diagonally across from the premises here involved, on the southeast corner, stands a four-story apartment house. A sketch of the area, prepared for the defendant and put in evidence by it, shows that this building stands on what appears to be a 50' x 100' plot, smaller than defendant's lot.
As was said in the recent case of Rexon v. Board of Adjustment of Haddonfield, 10 N.J. 1, 8 (1952):
"* * * A situation or condition of a piece of property is not to be deemed extraordinary and exceptional and to impose undue hardship upon the owner within the intendment of R.S. 40:55-39(c) if, viewed in the setting of its environment, the property may reasonably be adapted to a permitted use. Leimann v. Board of Adjustment of Cranford, supra. [9 N.J. 336 (1952)].
The contention of Edward Motors, Inc. that the lot has no practical utility except for the purposes of its business finds only the slightest support in the record.
The obvious and only motivation of the company in seeking the variance was economic. The proposed use of the lot would be of direct benefit to its growing business, and more *174 profitable. It is not interested in conforming uses, such as an apartment house or dwellings; the brightest promise of increasing returns lies in making the lot an integral and functional part of its automobile service operation.
The principle that it is not per se a sufficient reason for a variation that a nonconforming use will be more profitable to a particular landowner, has found frequent restatement in our reports since its pronouncement in Brandon v. Board of Commissioners of Montclair, 124 N.J L. 135 (Sup. Ct. 1940), affirmed 125 N.J.L. 367 (E. & A. 1940); Home Builders Ass'n. of Northern New Jersey v. Borough of Paramus, 7 N.J. 335, 343 (1951); Rexon v. Board of Adjustment of Haddonfield, 10 N.J. 1, 8 (1952). "The welfare of the community will not be sacrificed for the purpose of permitting the most profitable use of premises." Berdan v. City of Paterson, 1 N.J. 199, 205 (1948).
It is evident that business success has been the element productive of the situation claimed by Edward Motors, Inc. as establishing undue hardship, justifying a departure from the zoning plan. This alone is not sufficient to warrant the granting of a variance. Cf. Stolz v. Ellenstein, 7 N.J. 291, 296 (1951).
To permit the company to use the corner lot in the manner proposed would, in effect, be an extension of its present non-conforming use of the rear 25' x 100' portion of its building for garage purposes in a Second Residential District where such a use is prohibited. "The spirit of the zoning act has been to restrict rather than to increase non-conforming uses, and authority to vary the application of the general regulation should be sparingly exercised." Lumund v. Board of Adjustment of Rutherford, 4 N.J. 577, 585 (1950).
Pertinent to our inquiry as to the possible existence of undue hardship is the situation which obtained at the time the vacant land was acquired. The three smaller lots which make up the tract were purchased on behalf of the company in 1948 at a municipal tax sale by its president, *175 a New Jersey attorney. He admits that he had knowledge of the zoning ordinance at the time of the purchase, of the fact that the property was in a Second Residential District, and that the use to which the company proposes to put the land was prohibited unless the board of adjustment first granted a variance for that purpose. Additionally, he had a thorough knowledge of the character of the entire neighborhood, dating back to at least 1940 when the main building was bought. As an attorney he must have been, and in fact was, acutely aware of the bar of the zoning ordinance and the requirements of the Zoning Act. His knowledge is, of course, imputed to the company.
Prior knowledge of existing zoning restrictions is a material element to be considered in determining the existence of hardship. Lumund v. Board of Adjustment of Rutherford, 4 N.J. 577, 581 (1950); Tzeses v. Board of Trustees of South Orange, 22 N.J. Super. 45, 63 (App. Div. 1952). Cf. Oliva v. Garfield, 137 N.J.L. 475, 478 (Sup. Ct. 1948), affirmed 1 N.J. 184 (1948); and see Home Builders Ass'n. of Northern New Jersey v. Borough of Paramus, 7 N.J. 335, 339 (1951); Amon v. City of Rahway, 117 N.J.L. 589, 591 (Sup. Ct. 1937). Having purchased the land in the face of the zoning ordinance, the company may not now in good faith press its contention of undue hardship.
It should again be emphasized that the statute, R.S. 40:55-39, as amended, places two limitations upon the authority of a board of adjustment to grant relief from a zoning regulation: (1) there must be a showing that the applicant's land is uniquely affected, and (2) that the variance can be granted "without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and zoning ordinance." Lumund v. Board of Adjustment of Rutherford, 4 N.J. 577, 584. The court in Leimann v. Board of Adjustment of Cranford, 9 N.J. 336, 340 (1952) observed that
"* * * The power must be exercised consonant with the duty laid upon the local board to protect the integrity of the general *176 scheme from substantial impairment. A grant of variance which has the effect of frustrating the general scheme and is tantamount to an usurpation of the legislative power reserved to the governing body of the municipality to amend or revise the plan (R.S. 40:55-35 as amended by L. 1948, c. 305, p. 1222) cannot be sustained. * * *"
The board's action marks the first invasion of business in what is, under the zoning ordinance as well as in fact, an exclusively residential district. The variance would sustain, if it did not compel, other variances of like or more blighting character, and thus the general regulation would eventually be nullified. The dissenting language of Justice Heher in 165 Augusta Street, Inc., v. Collins, 9 N.J. 259, 269 (1952) is appropriate:
"* * * We have here a variant use that will alter the essential character of the area and tend to subvert the regulation itself  an unequal application of the zone rule in violation of common and individual right. The board has usurped the legislative function. It would seem to be fundamental that a variance under the cited section, by its very nature, is permissible only for the most compelling reasons consistent with the spirit and policy of the statute and the local ordinance made pursuant to the zoning power thereby granted: only thus can the line of demarcation between the legislative and administrative functions be maintained and the integrity of zoning secured. * * *"
The grant of a variance must be substantially grounded in competent evidence. The burden of proving that the statutory elements justifying relief from the zoning regulation are present is upon the landowner. Home Builders Ass'n. of Northern New Jersey v. Borough of Paramus, 7 N.J. 335, 343 (1951).
The finding of the board of adjustment that strict application of the zoning ordinance would result in "extreme and unnecessary hardship" upon the owner, and that the relief granted "is without substantial detriment to the public good and will not substantially impair the intent and purposes of the zoning ordinance," is utterly without basis in the proofs, assessed in the light of the statutory considerations controlling the allowance of variances from the zoning ordinance. The Law Division judge, who had the *177 benefit of a personal examination of the premises, reached the same conclusion in reversing the action taken by the board. The granting of the variance was error, and accordingly the action of the board was properly set aside.
Brief comment should be made about the report of physical inspection of the premises by members of the board, belatedly filed on February 27, 1952. This was a full three months after the passage of the resolution granting the variance, almost two and a half months after the filing of the complaint, and some three weeks after the pretrial conference. At the time this report was filed, the two members of the board of adjustment who had opposed the grant of a variance were no longer on the board. The report is allegedly based on inspections made in August and October of the previous year, at or about the time of the two formal hearings on the Edward Motors, Inc. application. In the circumstances, the conclusion is inescapable that the report is nothing more than an elaborate afterthought.
Our courts have approved the practice, where practical, of a board of adjustment making an inspection of the site and the neighborhood generally, thus acquiring firsthand knowledge invaluable to the board in arriving at a considered conclusion. Giordano v. City Commission of the City of Newark, 2 N.J. 585, 588 (1949). However, as was said by the court in that case (at pages 588-589):
"* * * the knowledge thus gained cannot be made the basis, in whole or in part, for the award of a variance or a change in a zoning ordinance unless there appears in the record the facts respecting the physical situation disclosed by the inspection.
No determination can be permitted to rest upon undisclosed findings or information dehors the record. If such could be the parties would be denied the essence of a hearing, they would be kept in ignorance of the things controlling the action of the board, and due process would be flouted. The rights of the parties can only be protected, both in the trial tribunal and on review, by a full disclosure on the record of the facts relied upon for the board's findings. Scaduto v. Bloomfield, 127 N.J.L. 1 (Sup. Ct. 1941); P.R.R. Co. v. N.J. State Aviation Comm. et al., 2 N.J. 64 [1949]."
Cf. Stolz v. Ellenstein, 7 N.J. 291, 296-297 (1951).
*178 The plaintiffs were entitled to rely on the record as they found it at the time they instituted their action. Here the board's finding of undue hardship, set out in its resolution of November 20, 1951 granting the variance, rested, if it had any support at all, upon undisclosed matters found on the view but not revealed in the record until some time after pretrial. The practice of filing a report of inspection after the board of adjustment has acted is condemned as irregular and improper.
However, giving full benefit to the report of physical inspection, we are still unable to find in the record any facts or evidence which would fulfill the statutory prerequisite of undue hardship, without which the granting of the variance was unauthorized.
The judgment below is affirmed.