47 N.J. Super. 148 (1957)
135 A.2d 561
THURBER H. BIERCE, JOHN M. CONTANT, NED FELDMAN AND SAVAGE C. FRIEZE, JR., PLAINTIFFS-APPELLANTS,
v.
ALBERT S. GROSS AND ROSE GROSS, HIS WIFE; BOARD OF ADJUSTMENT OF THE CITY OF ENGLEWOOD, PLANNING BOARD OF THE CITY OF ENGLEWOOD, THE COMMON COUNCIL OF THE CITY OF ENGLEWOOD AND FRANCIS M. MOON, BUILDING INSPECTOR OF THE CITY OF ENGLEWOOD, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 9, 1957.
Decided October 17, 1957.
*151 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Walter T. Wittman argued the cause for appellants.
Mr. Albert S. Gross argued the cause for respondents.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiffs appeal from a summary judgment entered in defendants' favor in the Law Division of the Superior Court, in an action in lieu of prerogative writ contesting the validity of a variance granted defendants Gross by defendant board of adjustment, as well as the approval by defendant planning board of a proposed subdivision of the Gross property as a minor subdivision. Plaintiffs own property in the neighborhood.
*152 On June 27, 1956 defendant Albert S. Gross entered into a contract to purchase lots 7 to 18, inclusive, in block 179, located on the easterly side of Jones Road, between Maple Street and Linden Avenue in the City of Englewood. The property is vacant land situated in Residence District No. 1, the most highly restricted residence zone in Englewood. On September 17, 1956 he, as equitable owner of the premises, applied to defendant board of adjustment for a variance from the local zoning ordinance. That ordinance, as adopted January 12, 1954, called for a minimum lot area of 15,000 square feet in Residence District No. 1. As amended June 22, 1954, the ordinance prescribed a minimum for building plots in that district of 22,000-square-foot area, 150-foot depth and 120-foot width (measured at right angles to the side line). The variance sought by Gross was for the purpose of permitting him to subdivide the property into two building plots. The first, consisting of lots 13 to 18, inclusive, would comply in every particular with the zoning ordinance minima; the other, made up of lots 7 to 12, inclusive, would not. It was Gross' intention to build a home on the latter, and there is no question but that this dwelling would meet the set-back, side-line, rear yard and other requirements of the zoning ordinance and building code.
Lots 7 to 12, inclusive, comprise 19,900 square feet, or 2,100 square feet less than the prescribed minimum area. They front on Jones Road, which cuts across them at an acute angle. Lots 11 and 12 have a depth of well over 200 feet; however, the depth of the other lots runs from 123.61' on the southern boundary of lot 10, to 159.29' on the northern boundary of lot 7. Thus, at its shallowest point, the plot made up of lots 7 to 12, inclusive, falls 26.39 feet short of the required 150-foot minimum depth. The back of the plot presents a step-like aspect.
At the zoning board hearing held September 28, 1956 Gross claimed hardship because of the shape of his property. He said he had tried to purchase land immediately to the rear of lots 7 to 10, so as to acquire the needed depth and acreage, but the owner refused to sell. It also appears that *153 he had unsuccessfully attempted to sell parts of his property to adjoining non-conforming owners, but without success. Gross' real estate expert described the property in question and testified that an improved plot on Maple Street, to the rear of the Gross holdings, contained 20,520 square feet. This, however, was a non-conforming property, predating the amendment of the ordinance. In his opinion, the amendment created a hardship as to the plot owned by Gross, lots 7 to 18, because it was oversize for the location, and granting the requested variance would not have a detrimental effect on the neighborhood.
Some 17 owners in the immediate area objected to the variance. They pointed out that Gross, an attorney, had bought the property with full knowledge of the zoning requirements; that as land for the building of homes became less available in Englewood, owners of larger holdings would inevitably apply for variances to divide their plots, so that more than one home could be built on them; that the reason for amending the ordinance to increase the minimum area requirement was to preserve the high residential character and beauty of the area; and that granting the variance would be an entering wedge to the destruction of the character of the neighborhood and residential values.
On October 24, 1956 the zoning board adopted a resolution reciting that lots 7 to 12, although conforming to the minimum 120' width requirement, did not meet the minimum requirements of depth and area; that Gross had applied for a variance to permit the erection of a one-family residence on those lots; that "no further property is available," and concluding that "strict application of the Zoning Ordinance in this case would work an undue hardship on the owner and that the granting of the permit would not be contrary to the public interest, nor substantially impair the intent and purpose of the zone plan and zoning ordinance."
The complaint characterizes the board's action as arbitrary, capricious and unlawful in that the granting of the variance was not supported by adequate, competent evidence; there was no proof of hardship; the board made no proper findings *154 of fact; and its decision was contrary to and destructive of the comprehensive zoning scheme of the City of Englewood and would result in substantial detriment to the property values of plaintiffs and others.
Gross and his wife proceeded to take title on October 29, 1956. Englewood had adopted a land subdivision ordinance pursuant to the Municipal Planning Act of 1953, N.J.S.A. 40:55-1.1 et seq., which required approval by the Planning Board of Englewood of all real property subdivisions. Pursuant to application made by Gross, the planning board on November 27, 1956 approved the proposed subdivision of lots 7 to 18, inclusive, as a minor subdivision and referred the same to defendant Common Council of Englewood for action. Plaintiffs charge that the subdivision approval is unlawful and contrary to the land subdivision ordinance in that it would result in the creation of a building plot smaller in area and shorter in depth than prescribed by the zoning ordinance, and they seek to set aside the action of the planning board as void.
At the oral argument counsel for the parties were requested, in the exercise of our original jurisdiction, R.R. 1:5-4, to submit a map of the area surrounding the Gross property. We have before us a small-scale land use map of Englewood, as well as a larger scale tax assessment map which shows the properties in the immediate vicinity of the land in question. The latter map indicates lot dimensions, acreages, improved and vacant lands, and also whether any lots improved prior to the zoning ordinance amendment of June 22, 1954 are non-conforming. The land use map clearly shows that the Gross property is in the south-central part of a large area consisting of improved properties, most of which far exceed the 22,000-square-foot minimum. It is undisputed that the northeastern part of Englewood is a residential area of the highest character, consisting for the most part of fine, large homes located on spacious grounds. The more detailed tax assessment map sharply focuses our attention upon the five blocks in the immediate vicinity of *155 the Gross property. A description of them is helpful to our determination.
These blocks are bounded by Mountain Road on the north, Woodland Street on the east, Linden Avenue on the south and Dana Place on the west, and are crossed by Maple Street, running approximately east-west, and Jones Road, running north-south. The block to the east of the Gross property consists of 13 properties, only one of which has less than 22,000 square feet and is non-conforming. Among them are lots with areas far larger than the Gross property: 57,380, 62,000, 67,954, 83,650, 92,793 and 151,280 square feet, respectively. To the northwest, bounded by Mountain Road, Jones Road, Maple Street and Dana Place are 19 lots; of these nine are non-conforming and nine have areas of well over 22,000 square feet, one comprising 43,560, another 55,750, another 100,188, and three 30,500 square feet. The non-conforming properties are located toward the western end, near Dana Place. To the north is a very large block consisting of 15 properties. Three of them, located at the far northeastern part, at the intersection of Mountain Road and Woodland Street, are non-conforming. Five of them are residential plots of 43,120, 132,400, 132,422, 144,700, and 226,000 square feet, respectively. The block where the Gross lots are located and the one to the east are divided by Elm Road. At some time in the past the frontage along Elm Road was divided into five lots on each side of the street, with areas between 20,200 and 21,400 square feet each. In the block to the east there remain three lots, fronting Woodland Street, two of them having 81,000 square feet and the third 83,800. Turning our attention to the Gross block, in addition to the mentioned non-conforming properties fronting Elm Road, are only two others, one to the south of his property with about half the required area and width, and the other in back of his property fronting Maple Street, lacking 20 feet in width and about 1,500 square feet. The remaining properties well meet the minimum requirements, one having 55,440 square feet, another 30,500 and still another 30,000.
*156 The large-area premises we have described have generous depths and widths, and it would appear from the land use map that they are featured by large homes and spacious grounds.
Defendants Gross filed an answer to the complaint, counterclaimed, and also cross-claimed against the other defendants, seeking judgment declaring the respective determinations of the board of adjustment and the planning board valid and that they were entitled to the issuance of building permits. The remaining defendants also answered, setting up special defenses. Defendants Gross then moved for summary judgment against plaintiffs and on their cross-claim, and plaintiffs countered with a motion for summary judgment against defendants, both motions being accompanied by affidavits. The Gross counterclaim and cross-claim were abandoned at the return of the motions, so that they are not involved in the present appeal.
The Law Division judge, after reciting the basic physical facts about the property, and summarizing the testimony of Gross and his real estate expert, briefly concluded that upon examination of the entire record he found that the board of adjustment had not acted in an arbitrary, capricious or unreasonable manner in granting the variance, and its action must therefore be sustained. Summary judgment was entered declaring that the grant of the variance was valid, as was the resolution of the planning board approving the minor subdivision, dismissing the counterclaim and cross-claim without costs, and dismissing the complaint with costs. This appeal followed.
The application for the variance in this case was prosecuted pursuant to N.J.S.A. 40:55-39(c). That statute gives the board of adjustment power to grant a variance:
"c. Where by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or by reason of exceptional topographic conditions, or by reason of other extraordinary and exceptional situation or condition of such piece of property, the strict application of any regulation enacted under the act would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon the owner of such property, to *157 authorize, upon an appeal relating to such property, a variance from such strict application so as to relieve such difficulties or hardship; * * *."
The board's authority is somewhat more restricted than it was before the amendment to that section effected by L. 1948, c. 305, sec. 6. N.J.S.A. 40:55-39 now concludes with the following comprehensive provision:
"No relief can be granted or action taken under the terms of this section unless such relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance."
We had occasion in Preye v. Board of Adjustment of North Bergen Township, 22 N.J. Super. 161, 170 et seq. (App. Div. 1952), certification denied 11 N.J. 328 (1953), to review the scope of the power thus given local boards of adjustment, and the role of appellate courts on review of board action. We there recognized that in allowing or denying a variance a zoning board exercises a function committed by the Zoning Act to its sound discretion and experienced judgment, controlled by law and reason. Its action is presumptively correct, and the person assailing that action has the burden of proving otherwise. The board's action may not be set aside by the appellate court unless there has been an abuse of the delegated legal discretion. 165 Augusta Street, Inc., v. Collins, 9 N.J. 259, 265 (1952). Although we withhold substituting our judgment for that of the board of adjustment within its sphere of action, absent evidence that in granting or denying a variance it acted in an arbitrary, capricious or unreasonable manner, we do not hesitate to apply the necessary corrective whenever the board's determination is without warrant or support, assessed in the light of the statutory considerations controlling the allowance of variances.
In order to support the grant of a variance under N.J.S.A. 40:55-39(c), the applicant must affirmatively prove undue hardship. 165 Augusta Street, Inc., v. Collins, *158 above, 9 N.J. at page 263, and cases cited; Rexon v. Board of Adjustment of Borough of Haddonfield, 10 N.J. 1, 6 (1952). And see Ward v. Scott, 11 N.J. 117, 126 (1952). As we stated in the Preye case:
"The undue hardship must inhere in the particular premises for which the variance is claimed. A variance cannot legally be granted for reasons which also apply to other properties in the same neighborhood. A board of adjustment may exercise the discretionary power entrusted to it by the statute in favor of an applicant only where his plight is attributable to circumstances uniquely touching his land as distinguished from conditions that affect the rest of the neighborhood. [citing cases]" (22 N.J. Super. at page 171)
In allowing a variance the board of adjustment must not only make findings which are legally founded in the statutory criteria, Ward v. Scott, above; Izenberg v. Board of Adjustment of City of Paterson, 35 N.J. Super. 583, 588 (App. Div. 1955), but those findings must also be substantially grounded in competent evidence. Dolan v. DeCapua, 16 N.J. 599, 612 (1954); Stolz v. Ellenstein, 7 N.J. 291, 295-297 (1951). In Tomko v. Vissers, 21 N.J. 226, 239 (1956), the Supreme Court adverted to the responsibility of a board of adjustment to weigh the evidence submitted and reach basic factual determinations, and from these derive the ultimate facts from which the recommendation or rejection of the application flows. The findings in the resolution adopted by the board of adjustment in the instant case merely recite the statutory language. As such, they cannot be considered as much more than ultimate findings. See Davis, Administrative Law, 531-537 (1951). Although plaintiffs, in passing, allude to the necessity of the board making findings which are legally founded in the statutory criteria, citing the Ward case, above, they do not argue that those contained in the board's resolution are inadequate on their face. Instead, they direct their attention to the question of whether the evidence supports the ultimate findings and the granting of the variance thereon.
We have all the underlying facts before us; the physical characteristics of the subject premises and the *159 surrounding property are not disputed and clearly appear in the transcript of the board hearing and on the two maps to which we have referred. The decision of the board represented merely its subjective determination from undisputed objective facts that the statutory requirements for the exercise of the variance power were present. In the circumstances the need for basic factual findings, which would amount to no more than an iteration of the undisputed testimony, seems unnecessary. We find enough in the record and in the board's resolution, sketchy and summary though it is in its conclusion, to afford a sufficient basis for judicial review.
That the applicant in this case may find it more profitable to have his property divided into two plots suitable for homebuilding is not in itself a sufficient reason for the grant of a variance. Home Builders Ass'n. of Northern New Jersey v. Borough of Paramus, 7 N.J. 335, 343 (1951). As was said in Berdan v. City of Paterson, 1 N.J. 199, 205 (1948), "The welfare of the community will not be sacrificed for the purpose of permitting the most profitable use of premises."
Plaintiffs make special stress of the fact that when Gross purchased the property he, as a lawyer, above all people, should have been aware of the existing zoning ordinance and that it would be impossible for him to subdivide his property to permit the erection of two homes. See Home Builders Ass'n. of Northern New Jersey v. Borough of Paramus, above, 7 N.J. at page 343 (such knowledge "weighs heavily" against a claim of hardship); Preye v. Board of Adjustment of North Bergen Township, above, 22 N.J. Super. at page 175 ("Prior knowledge of existing zoning ordinances is a material element to be considered in determining the existence of hardship."). In the recent case of Ardolino v. Florham Park Board of Adjustment, 24 N.J. 94, 106 (1957), the Supreme Court said that in evaluating a claim of undue hardship, "the purchase of land after the adoption of an ordinance prescribing a greater requirement than can be complied with is a circumstance *160 to be considered. * * * It is not conclusive by any means, but it is unquestionably a material element bearing on the issue, * * * and weighs heavily against the plaintiffs' claim," citing cases.
The claim of hardship here seems to be predicated on two factors: (1) unless the variance is granted, the Gross property will be unduly large for the construction of only one house, in view of the neighborhood, and (2) adjoining building plots have areas which are not only less than the prescribed 22,000-square-foot minimum, but less than the plot (lots 7 to 12, inclusive) which defendant presently desires to use. The record does not support the claim. As to the first argument, we noted, in giving a detailed description of the surrounding area, that a large number of lots have areas far exceeding the Gross property. It takes little more than a cursory glance at the land use map to conclude that a great number of the properties in Residence District No. 1, constituting the northeast section of Englewood, have an acreage considerably in excess of that of defendants Gross. As to the second contention, the adjoining lots to which the applicant refers are, as has already been pointed out, non-conforming uses, as are the few located elsewhere in the general neighborhood.
Defendants' property is not uniquely circumstanced. They have failed to make out a case of hardship.
Area, width and depth requirements have a significant role in zoning, and their purpose is to prevent overcrowding, undue concentration of population, and the preservation of the essential residential character of a community. Cf. Lionshead Lake, Inc., v. Wayne Township, 10 N.J. 165 (1952), appeal dismissed 344 U.S. 919, 73 S.Ct. 386, 97 L.Ed. 708 (1953); Fischer v. Bedminster Township, 11 N.J. 194 (1952). While the area restriction of the Englewood zoning ordinance, coupled with the refusal of neighbors to sell property to Gross, force him to use more land than the minimum restrictions prescribe, this in itself is not a hardship which would warrant the granting of a variance, within the reasoning of our cases.
*161 We find the cases of Preye v. Board of Adjustment of North Bergen Township, above, 22 N.J. Super. 161 (App. Div. 1952), certification denied 11 N.J. 328 (1953), and Tzeses v. Board of Trustees of Village of South Orange, 22 N.J. Super. 45 (App. Div. 1952), certification denied Rush v. Board of Adjustment of Village of South Orange, 11 N.J. 327 (1953), quite apposite. As we declared in the latter case:
"The courts should not lend themselves to impairment of established residential areas, and thus undo the careful thought that has gone into a zoning arrangement projected by a planning board and implemented by action of the governing body in passing the necessary zoning ordinance." (22 N.J. Super at page 62).
There is no reason why defendants should not, in keeping with the general character of the properties in Residential District No. 1 of Englewood, use lots Nos. 7 to 18 for a single-family residence. Indeed, they made no attempt to show that the property cannot so be used. In the circumstances, and in the light of having purchased the property with knowledge of the zoning requirements, they cannot ask to be relieved of an alleged hardship.
The planning board resolution necessarily falls with the zoning board's grant.
The judgment of the Law Division is reversed and judgment entered in favor of plaintiff.