81 N.J. Super. 526 (1963)
196 A.2d 250
FRANK TOUTPHOEUS, GEORGE B. ULRICH, R.B. PARRY, D. KNIEBEL, DANIEL RANDALL, ROBERT J. GOODYEAR AND HARRY F. WALTHER, PLAINTIFFS-RESPONDENTS,
v.
FRANK JOY, JR., DEFENDANT-APPELLANT, AND BOARD OF ADJUSTMENT OF THE BOROUGH OF ORADELL, EDWARD OPSUT, BUILDING INSPECTOR OF THE BOROUGH OF ORADELL, MAYOR AND COUNCIL OF THE BOROUGH OF ORADELL, PLANNING BOARD OF THE BOROUGH OF ORADELL, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 26, 1963.
Decided December 19, 1963.
*527 Before Judges GOLDMANN, KILKENNY and COLLESTER.
*528 Mr. Michael J. Ferrara argued the cause for appellant (Messrs. Ferrara & Guez, attorneys).
Mr. Richard A. Kurland argued the cause for respondents.
Mr. James A. Major argued the cause for defendants Borough of Oradell and Edward Opsut, Building Inspector (Mr. Everett I. Smith, attorney; Mr. James A. Major, II, on the brief).
The opinion of the court was delivered by KILKENNY, J.A.D.
Defendant Frank Joy, Jr. appeals from a judgment of the Law Division, setting aside and declearing null and void (1) a subdivision of his property into two lots, each with a frontage of 85 feet, conditionally approved by the planning board of the Borough of Oradell, and (2) a variance granted by the board of adjustment on the ground of hardship allowing use of the subdivided lots for residential purposes, notwithstanding the local zoning requirement of a minimum frontage of 100 feet for each lot.
The case was presented to the Law Division solely on the record below, briefs and oral argument. The Law Division determined that (1) there was no proof of hardship, and (2) the chairman of the board of adjustment had not completely removed himself from the proceeding before the board, after publicly disqualifying himself at the hearing on the ground that he had an interest in the application, even though he did not participate in the discussion or vote. The Law Division also found lacking in merit defendant Joy's contention that plaintiffs, property owners within a radius of 200 feet of the subject property, had not filed their complaint within the time limited by R.R. 4:88-15.
Plaintiffs had also attacked the planning board's treatment of Joy's application as one for a "minor subdivision" and its granting thereof without notice to the neighboring property owners or any opportunity afforded them to be heard. The Law Division decided that the planning board had properly *529 processed the application as one for a minor subdivision. There is no cross appeal from that phase of the judgment.
Joy purchased the property as two separate parcels, known as lot 22A in block 227 and lot 23 in block 270. There was a one-family house on the corner lot, lot 23, which had a frontage of 113 feet on Forest Avenue and a depth of about 281 feet along Oradell Avenue. Adjoining on the south was lot 22A, measuring 80 x 281 feet.
Prior to March 7, 1960 the zoning ordinance required lots in this AA residential zone to have a street frontage of at least 75 feet. On that date the borough adopted an ordinance increasing the required frontage to 100 feet and providing for a minimum area of 10,000 square feet for each building plot. Joy purchased subsequent to this ordinance.
On May 9, 1961 Joy applied to the planning board for approval of a minor subdivision to eliminate part of the line dividing his lots and establishing a new line (dotted line on diagram, infra), so as to create three lots, as follows:

His application was granted without notice or hearing.
On October 10, 1961 Joy applied for a further minor subdivision, whose effect was to divide 170 feet of his property along Oradell Avenue into two lots, each with a frontage of 85 feet on that avenue. Because of the depth of these proposed lots, the one contained an area of 12,506 square feet and the other 15,227 square feet, thus meeting the minimum area *530 requirement. The application was granted without notice or hearing. The map was signed on October 12, 1961 with the notation "conditionally approved." Since the lots had less frontage than the minimum 100-foot requirement of the zoning ordinance, planning board approval was given subject to the condition that Joy obtain the necessary variance.
On October 13, 1961 Joy applied to the board of adjustment for a variance to approve the undersized lots, in accordance with the planning board's conditional approval. Notice of the hearing to be held on October 23, 1962 was given to all property owners within a radius of 200 feet, as required by law. Plaintiffs and their attorney attended the scheduled hearing to object to the variance. The chairman disqualified himself because of interest in the application, but did not specify the interest.
No stenographic record was made of the proceedings at the October 23rd meeting. The minutes thereof indicate that there was a statement by Joy's attorney that the application was based on N.J.S.A. 40:55-39(c), the hardship provision. He described the neighborhood, with the Bergen County Catholic High School opposite, and the gasoline station, auto repair shop on Forest Avenue in Paramus, and the small parcels, also on Forest Avenue and on Oradell Avenue in Paramus, most of which he alleged were within the 200-foot area. He contended that the variance sought would actually cause the property to comply with, rather than vary, the character of the neighborhood. No proofs were submitted to support this statement beyond the testimony of Joy, noted below.
Joy testified that he was a builder with 15 years' experience, owned the property in question, and "did not feel the property in the neighborhood would be depreciated in any manner." He stated that at the time he purchased the land he intended to subdivide it into four lots. He said that he planned, if his application was approved, to erect on one lot a ranch-type house, 47 feet by 43 feet, in the $40,000-$43,000 bracket; and, on the other lot, a split-level dwelling 59 1/2 feet long by *531 32 feet deep, in the $30,000 bracket. There would be 38 feet of space between the houses. He had a buyer for the ranch-type house and another person interested in the split-level.
The objectors' attorney stated that the application was in reality for a major subdivision, without complying with the procedural requirements therefor; sought to create two substandard lots, thus "whittling away" the zoning ordinance; and that the land was purchased subsequent to the adoption of the zoning ordinance "without certainty that this variance would be granted." Several objectors testified, asserting opposition to any relaxation of the zoning requirement. Following their testimony, the board announced that decision would be reserved and handed down at the November meeting.
On November 27, 1961 the variance was granted at a regular meeting of the board of adjustment. Three members voted in favor of the application and two abstained, including the chairman. The chairman signed the resolution approving the grant of the variance, in his capacity as chairman. The attorney of plaintiffs was present at that meeting and thus had actual knowledge on that date of the board's decision. However, it was not until January 25, 1962 that he received a copy of the findings and conclusion of the board of adjustment. The decision of this board was first published in a newspaper on January 25, 1962. On February 13, 1962 the mayor and clerk of Oradell signed the map.

I.
Plaintiffs' complaint in the Law Division was filed on March 8, 1962, 42 days after the newspaper publication of the decision of the board of adjustment. Defendant Joy contends here, as he did in the Law Division, that the complaint was not filed within the 45 days limited by R.R. 4:88-15, in that plaintiffs, through their attorney, had actual knowledge of the board's decision on November 27, 1961. He places reliance upon Riedel v. Sheeran, 73 N.J. Super. 105 (Law Div. 1962).
*532 R.R. 4:88-15 requires proceedings in lieu of prerogative writs to be commenced within 45 days of the accrual of the right to review, except that under (b) of this rule review of any determination of a planning board or board of adjustment may not be commenced "after 45 days from the publication of a notice once in the official newspaper of the municipality or a newspaper of general circulation in the municipality." The action herein was commenced within the 45-day period expressly provided for by this rule. The Law Division, therefore, properly held that the instant suit was commenced within time.
Moreover, we agree with its conclusion that, if enlargement of the time were required to be granted to bring the Law Division action, R.R. 4:88-15(c) permits such enlargement "[w]here it is manifest that the interest of justice requires," and this would be such a case. Even were Riedel v. Sheeran, supra, a correct statement of the law, it was not published until after the filing of the instant suit and represents a departure from the plain language of R.R. 4:88-15(b) upon which members of the bar had a right to rely.
We are not called upon herein to decide the correctness of the decision in Riedel v. Sheeran. There were other facts therein not pertinent here. More particularly, there was no publication of the municipal board action in that case, so that the trial court therein adopted the expedient of calculating the 45-day period from the date of actual notice of the board's decision. The rule expressed in Riedel v. Sheeran is not to be followed where the board's decision is followed by publication of notice thereof. Instead, the language of R.R. 4:88-15(b) controls. Our reservation in passing judgment on the correctness of Riedel v. Sheeran is due to judicial restraint, rather than any tacit approval.

II.
The "interest" in the application, not specified by the chairman, when he announced publicly his voluntary disqualification, *533 consisted solely in the fact that he had acted as a co-broker in the sale of the subject property to Joy approximately one year before any action was taken before the board of adjustment. We are told this in Joy's brief, and we are also told therein that: "There was no further continuing interest by this Chairman of the Board."
These facts were not made known to the trial court. It accepted at face value the chairman's declaration at the hearing of October 23, 1961 that "because of an interest in the application" he would not participate in the discussion or vote in the decision of the board. It is conceded that he did not participate in the hearing of October 23, 1961 beyond announcing the matter for consideration of the board when it was reached on the agenda of the meeting. We assume that he remained in the hearing room. Later, when a disinterested majority of the board adopted the resolution on November 27, 1961, granting the variance, the chairman signed the resolution in his official capacity, even though he had expressly abstained from voting. The trial court found that the chairman's conduct had tainted the board's action because he had not entirely removed himself from the proceeding.
We disagree with the conclusion reached as to this aspect of the case. We can understand the trial court's assumption that the chairman had a conflicting interest within the meaning of N.J.S.A. 40:55-1.4 in view of his unexplained declaration of an interest and his voluntary disqualification. But the bare facts before us do not reveal a disqualifying interest merely because a year prior to the application he had acted as a co-broker in the sale of the property to Joy. Such a remote and nebulous interest, without more, is not enough to invalidate municipal action otherwise properly taken. Van Itallie v. Borough of Franklin Lakes, 28 N.J. 258, 268 (1958).
If the chairman had a disqualifying interest in the application before the board, it would have been better to have noted it specifically on the record and, if possible for him to have withdrawn completely from the meeting room. The matter *534 could have been placed first or last on the agenda to facilitate his absence during that hearing without interfering with the performance of his official duties with reference to other pending matters. The vice-chairman, if any, or an acting chairman would then preside during the temporary absence of the chairman. This substituted presiding officer could have signed the formal resolution. In this manner, there would have been a scrupulous avoidance of even the slightest suspicion of untoward conduct.
We recognize that the chairman's declaration of "an interest in the application," without specifying its remote character, might have conveyed to the other board members an erroneous impression that he had a more immediate and substantial interest than the remote interest noted above. However, he publicly expressed his disqualification, abstained from voting and did not participate in the substantial activity of the hearing. His calling the case when it was reached on the agenda, and his subscribing the formal resolution in his official capacity might very well have been avoided, but we do not regard these pro forma acts as sufficient to nullify the action of the board of adjustment. The record is barren of any details regarding his continued presence in the room during the hearing. There is no evidence that his physical presence, without more, had any greater potential of psychological influence than his complete withdrawal would have had after his public announcement. There was no participation by the chairman in the deliberative process as in Aldom v. Borough of Roseland, 42 N.J. Super. 495, 499 (App. Div. 1956).

III.
The sparse record before us does not permit a sound appraisal of the local board's determination that Joy was entitled to the variance on the ground of hardship for the reasons expressed in its resolution. So, too, there is absent from the record competent proof upon which to justify the board's findings that the hardship is "unique" to the property *535 in question and is not shared by properties in the immediate vicinity; the proposed lots would be greater in size than many of the properties in the adjacent neighborhood; the variance would not alter the essential character of the neighborhood, the lots exceeding the area requirements and the proposed buildings being equal to and in excess of the cost and size of dwellings in the immediate area; and the variance "would not be in conflict with the objectives of the Zone Plan of Oradell" because of lesser requirements formerly existing, the proposed lots would be in excess of many properties in the neighboring area, and the proposed structures "would definitely maintain the present standards of the neighborhood."
We deem it expedient to remand this matter to the board of adjustment of Oradell for a new hearing at which competent proofs can be adduced and a proper record made. Of course, notice of that hearing will be given as upon an original application for a variance. The board can then decide the matter anew on the basis of the proofs submitted.
For the future guidance of the board of adjustment we call attention to our decision in Bierce v. Gross, 47 N.J. Super. 148 (1957). "In order to support the grant of a variance under N.J.S.A. 40:55-39(c), the applicant must affirmatively prove undue hardship." Id., at p. 157. "That the applicant in this case may find it more profitable to have his property divided into two plots suitable for homebuilding is not in itself a sufficient reason for the grant of a variance." Id., at p. 159. As we stated in Preye v. Board of Adjustment, North Bergen Tp., 22 N.J. Super. 161, 171 (1952), certification denied 11 N.J. 328 (1953):
"The undue hardship must inhere in the particular premises for which the variance is claimed. A variance cannot legally be granted for reasons which also apply to other properties in the same neighborhood."
That the applicant purchased the property in question after the adoption of the 1960 amendatory ordinance is a circumstance *536 to be considered in determining the matter of hardship, but it is not controlling. Preye v. Board of Adjustment, North Bergen Tp., supra; Ardolino v. Florham Park Board of Adjustment, 24 N.J. 94, 106 (1957).
The findings of the Oradell board of adjustment indicate that requiring Joy to limit his building operations to one residence on this oversized plot would cause him undue hardship and that this hardship would be "unique" to his property and inconsistent with the general character of the neighborhood. The present record does not contain proper evidence supportive of such findings. The interests of justice require a remand to the board of adjustment for a rehearing and an opportunity to establish by competent proofs valid reasons for the grant of a variance.
The judgment of the Law Division is reversed and the matter is remanded to the board of adjustment for further proceedings in accordance with this opinion. We do not retain jurisdiction. No costs.