106 A.3d 1273

TOWN OF HARRISON BOARD OF EDUCATION, PLAINTIFF, v. BARBARA NETCHERT, HUDSON COUNTY CLERK, DEFENDANT, BOROUGH OF EAST NEWARK, DEFENDANT–INTERVENOR.

Superior Court of New Jersey
Law Division
Hudson County

Decided October 20, 2014—Approved for Publication January 22, 2015.

*Richard E. Shapiro* for plaintiff (*Richard E. Shapiro, LLC*, attorneys).

*Mark E. Morchel*, Deputy County Counsel for defendant (*Donato J. Battista*, Hudson County Counsel, attorney).

*Neil D. Marotta* and *Michael A. D'Aquanni* for defendant-intervenor (*Law Offices of Marotta & Garvey* and *Roth D'Aquanni, LLC*, attorneys).

BARISO, A.J.S.C.

This case presents an interesting conundrum: whether a referendum question that plaintiff concedes has no actual legal effect on the relationship between the parties nonetheless should be barred. Plaintiff Town of Harrison Board of Education ("Harrison BOE") filed a verified complaint in lieu of prerogative writs seeking an order restraining defendant Barbara Netchert ("Netchert"), in her capacity as Hudson County Clerk, from printing a nonbinding referendum question, submitted by the Borough of East Newark's mayor and governing body ("East Newark"), on the ballot for the general election in November 2014. The central issue involves the legislative division of power at the municipal level between the local governing body and the board of education.

The parties have filed competing motions for summary judgment. For the reasons that follow, this court holds that the

nonbinding referendum question is proper, but that the proposed interpretive statement must be stricken.

I.

The essential facts are not in dispute; they are taken from the Harrison BOE's verified complaint and East Newark's statement of undisputed material facts submitted with its motion.

For over 100 years, the Borough of East Newark Board of Education ("East Newark BOE"), which has no high school, has been in a sending-receiving relationship with the Harrison BOE. This agreement is authorized by the education code, *N.J.S.A.* 18A:38-11, which allows the board of education of a district containing no high school to designate another district for its high school students to attend. The Harrison–East Newark send-receive relationship has allowed high school students from the East Newark School District to attend Harrison High School. Neither the East Newark BOE nor plaintiff has any writing from the New Jersey Department of Education approving the send-receive agreement.

In the past couple of years, the East Newark BOE has raised with the Harrison BOE the issue of potentially terminating the sending-receiving relationship for East Newark's high school students. The Harrison BOE has refused to do so unless the East Newark BOE follows the legally required procedure under *N.J.S.A.* 18A:38-13 for terminating the relationship. That statute requires that the East Newark BOE submit an application and feasibility study to the Commissioner of Education for approval.

In the 2012–13 school year, the East Newark BOE paid the Harrison BOE $14,764 per student who attended Harrison High School. The following school year, 2013–14, the tuition increased to $16,300 per student. In or around December 2013, the East Newark BOE adopted a resolution to pursue an alternative to the sending-receiving arrangement with plaintiff.

On May 14, 2014, the East Newark Mayor and Borough Council, at a public meeting, approved a resolution authorizing the County Clerk to place the following public question on the general election ballot for the November 4, 2014, election as a non-binding referendum for the voters' consideration: "Should East Newark High School students be sent to Kearny High School instead of Harrison High School?"

On May 29, 2014, a letter was sent from the East Newark Borough Clerk to the Hudson County Clerk, requesting that the nonbinding referendum be placed on the ballot for the November 2014 election.

On June 23, 2014, in response to a request from the County Clerk, the Acting Borough Clerk for the Borough of East Newark submitted an interpretive statement relating to the nonbinding referendum. The statement read:

> Currently the East Newark High School students attend Harrison High School in accordance with a send/receive relationship, from the Borough of East Newark to Harrison High School. It is the desire of the Mayor and Borough Council of the Borough of East Newark to obtain a statement of the voters of the borough if in fact this current relationship with Harrison High School should be terminated and the East Newark students be sent to Kearny High School?

The Harrison BOE asserts they first became officially aware of the submission of the nonbinding referendum on September 11, 2014, when the Board received a written copy of the question and interpretive statement from the Hudson County Clerk's Office. The Harrison BOE states that neither the Borough of East Newark nor the East Newark BOE provided it with the May 14, 2014, resolution, the May 29, 2014, request to the County Clerk to place the question on the ballot, or the interpretive statement transmitted on June 23, 2014.

By letter dated September 12, 2014, the Harrison BOE's attorney requested that the Hudson County Clerk immediately reject East Newark's request to place the "legally impermissible" question on the ballot and/or to strike the proposed question from the ballot.

On September 15, 2014, the Harrison BOE received a response from a deputy counsel in the Office of the County Counsel for Hudson County, that the County Clerk would not pass judgment on the substantive nature of the referendum question or the legality of the submitted question. The letter also stated that the Clerk would give her instructions to the printer to commence printing the ballots.

On September 18, 2014, plaintiff filed this action by an order to show cause and verified complaint, seeking a preliminary injunction preventing Netchert, in her official capacity as Hudson County Clerk, from placing the proposed question on the ballot for the general election on November 4, 2014, or, if the ballot had already been printed, to remove the proposed question.

The next day, on September 19, 2014, this court (i) entered an order setting an initial return date of September 24, 2014, (ii) granted plaintiff's request to temporarily prevent Netchert from placing the proposed question on the ballot, and (iii) denied plaintiff's request that Netchert remove the question from the ballot in the event that the ballot was already printed.

A hearing was held on September 24, 2014, the return date of the order to show cause. As a result, (1) the Borough of East Newark's motion to intervene was granted; (2) plaintiff's application for preliminary injunctive relief was denied; and (3) East Newark's motion to dismiss the complaint for failure to state a claim also was denied. The court then converted East Newark's motion to dismiss into a motion for summary judgment, with a return date set for October 17, 2014, so that the parties could engage in limited discovery and more fully brief the issues involved in this case.

East Newark now moves for summary judgment dismissing the Harrison BOE's complaint. The Harrison BOE has cross-moved for summary judgment seeking removal of the referendum question from the ballot for the November 4, 2014, general election.

## II.

East Newark raises the following arguments: (1) plaintiff's complaint should be dismissed because the Harrison BOE has not demonstrated that the nonbinding referendum is improper or beyond the scope of the Borough's authority under *N.J.S.A.* 19:37–1; (2) plaintiff will not be harmed by the nonbinding referendum; (3) plaintiff has not shown that the Borough acted in an arbitrary, capricious, or unreasonable manner, as required for actions in lieu of prerogative writs, seeking to prevent a municipal entity from taking a specific action; (4) plaintiff's complaint is time-barred by *Rule* 4:69–6(a) because it is brought later than forty-five days after the accrual of the claim; and, (5) plaintiff's complaint should be dismissed for lack of standing.

The Harrison BOE responds to each of East Newark's arguments and asserts that, because the Mayor and Borough Council of East Newark have no jurisdiction to act regarding the sending-receiving relationship, East Newark has no statutory authority under *N.J.S.A.* 19:37–1 to place the referendum question on the ballot. Additionally, the Harrison BOE now attempts to submit an amended verified complaint, alleging that the interpretive statement should be invalidated because the statement was drafted and submitted without a resolution by the Borough Council.

## III.

### A.

*Rule* 4:46–2(c) provides that a court shall render summary judgment only when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." To determine whether there is a genuine issue as to a material fact, the court views the facts in a light most favorable to the nonmoving party. *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 523, 666 *A.*2d 146 (1995); *see*

*also Anderson v. Liberty Lobby, Inc.,* 477 *U.S.* 242, 248, 106 *S.Ct.* 2505, 2510, 91 *L.Ed.*2d 202 (1986).

█ Generally, summary judgment is inappropriate before the completion of discovery, and a litigant should have the opportunity for full exposure of its case. *See Velantzas v. Colgate–Palmolive Co.,* 109 *N.J.* 189, 193, 536 *A.*2d 237 (1988); *Mohamed v. Iglesia Evangelica Oasis De Salvacion,* 424 *N.J.Super.* 489, 498, 38 *A.*3d 669 (App.Div.2012). However, summary judgment may be granted if further discovery will not alter the result. *Minoia v. Kushner,* 365 *N.J.Super.* 304, 307, 839 *A.*2d 90 (App.Div.), *certif. denied,* 180 *N.J.* 354, 851 *A.*2d 648 (2004).

## B.

East Newark asserts that the Harrison BOE lacks standing to challenge the referendum of a neighboring municipality. The Harrison BOE contends that it has standing to challenge the referendum because its claim implicates issues of considerable public interest and importance. This court agrees with plaintiff and concludes that the Harrison BOE does have standing to bring this action.

█ New Jersey defines standing broadly and does not confine our courts to the rigid "case or controversy" requirement under Article III, § 2 of the United States Constitution. *Salorio v. Glaser,* 82 *N.J.* 482, 490, 414 *A.*2d 943 (1980). Furthermore, the *Rules of Court* concerning prerogative writs, *Rule* 4:69–1 to 4:69–7, reflect a commitment to allowing appropriate citizen challenge in lieu of the old common law writs. *Alexander's Dep't Stores of N.J. v. Borough of Paramus,* 125 *N.J.* 100, 107, 592 *A.*2d 1168 (1991); *In re LiVolsi,* 85 *N.J.* 576, 594, 428 *A.*2d 1268 (1981). Although there must be a substantial likelihood that the plaintiff will experience some harm, the plaintiff's "interest may be accorded proportionately less significance where it coincides with a strong public interest," even where that interest is slight or

indirect. *N.J. State Chamber of Commerce v. N.J. Election Law Enforcement Comm'n,* 82 *N.J.* 57, 68, 411 *A.*2d 168 (1980).

Even when standing is debatable, New Jersey courts will allow the case to proceed if resolution of the issues is in the public interest. *Booth v. Twp. of Winslow,* 193 *N.J.Super.* 637, 640, 475 *A.*2d 644 (App.Div.1984). The Appellate Division recently endorsed this principle, holding that although a statewide teachers' organization only had a slight private interest in contesting charter schools in Newark, that slight interest, coupled with a substantial public interest, was sufficient to afford standing. *In re Grant of Charter to Merit Preparatory Charter Sch. of Newark,* 435 *N.J.Super.* 273, 280, 88 *A.*3d 208 (App.Div.2014). The court stressed that, although it was not convinced that the plaintiff would be adversely affected, the case raised "a novel legal issue ... of 'substantial public importance'" warranting a finding of standing. *Ibid.* (citations omitted).

Furthermore, the Appellate Division, in a recent case considering compliance with deadlines in *N.J.S.A.* 19:37–1 to 19:37–5, concluded that "the proper interpretation of the election laws that have been enacted by our Legislature" and "the important fundamentals of carrying out a proper election" presented an important public question and clearly affected a matter of public interest. *Finkel v. Twp. Comm. of Twp. of Hopewell,* 434 *N.J.Super.* 303, 315–16, 84 *A.*3d 263 (App.Div.2013).

These principles lead to the conclusion that the Harrison BOE has standing to pursue the issue presented. As the current receiving district of East Newark high school students, the Harrison BOE has an interest in a legal and lawful vote on the nonbinding referendum asking voters whether the send-receive relationship should be terminated. The Harrison BOE is neither a mere interloper nor an intermeddler in this dispute. *See Stubaus v. Whitman,* 339 *N.J.Super.* 38, 48, 770 *A.*2d 1222 (App. Div.2001). Even if that interest is arguably slight, this case presents significant issues of public importance relating to compli-

ance with the elections law under *N.J.S.A.* 19:37–1, and thus warrants a finding that standing exists.

## C.

█ East Newark contends that the complaint should be dismissed because it was filed beyond forty-five days of plaintiff's learning about the referendum. East Newark argues that the Harrison BOE was on notice of the referendum either after it was approved at an open public meeting on May 14, 2014, or after an article discussing the resolution was published in a publicly available local newspaper on May 28, 2014. East Newark also contends that, because the possibility of a referendum question was discussed by plaintiff and East Newark at a meeting on April 30, 2014, plaintiff was on notice that a public meeting would be scheduled. Plaintiff responds that its application is timely because it filed the verified complaint within forty-five days of the actual notice it received on September 11, 2014, from the County Clerk or, in the alternative, because the time limits for prerogative writs should be relaxed under *Rule* 4:69–6(c).

An action in lieu of prerogative writs must be commenced no later than forty-five days after the accrual of the right to review. *R.* 4:69–6(a). The *Rule* does not define when the rights triggering the forty-five day period accrue; rather, it is determined by substantive law.

The right of review accrued on the date plaintiff actually received notice that the County Clerk placed the question on the ballot: September 11, 2014. First, plaintiff challenges the County Clerk's placement of the referendum question on the ballot, not the resolution itself. Thus, the forty-five day limitations period runs from the date plaintiff received notice of the County Clerk's decision to place the question on the ballot, that is, September 11, 2014. The fact that the County Clerk requested an interpretive statement in June 2014, as defendants made clear in oral argument, only bolsters the conclusion that the right of judicial review

accrued when the County Clerk made the decision to put the item on the ballot.

Furthermore, East Newark's proposition that the Harrison BOE was on notice in April 2014 of the possibility of a referendum is not persuasive. *See Island Club Condo. Homeowners Ass'n v. City of Atl. City*, 298 *N.J.Super.* 516, 520–21, 689 *A.*2d 865 (Law Div.1995) (holding that notice is ineffective to commence forty-five day rule prior to adoption of memorializing resolution). East Newark's contention that notice was given via the open public meeting on May 14, 2014, also is unavailing because no evidence has been submitted suggesting a member of the Harrison BOE was at the meeting. In this respect, the authorities on which East Newark relies are inapposite: in each of those cases the party charged with notice either was present or represented at the meeting. *See, e.g., Stokes v. Twp. of Lawrence*, 111 *N.J.Super.* 134, 137, 268 *A.*2d 10 (App.Div.1970); *Toutphoeus v. Joy*, 81 *N.J.Super.* 526, 531, 196 *A.*2d 250 (App.Div.1963).

Finally, whether a newspaper article merely mentioning the referendum constitutes publication within the meaning of *Rule* 4:69–6 remains to be addressed. *Rule* 4:69–6(b)(3), although dealing with land use, is informative. Tellingly, all the cases relied on by East Newark in arguing that the May 28, 2014, newspaper article provided sufficient notice are land use cases. *See, e.g., Stokes, supra*, 111 *N.J.Super.* at 139, 268 *A.*2d 10; *Toutphoeus, supra*, 81 *N.J.Super.* at 526, 196 *A.*2d 250; *Island Club Condo. Homeowners Ass'n, supra*, 298 *N.J.Super.* at 524, 689 *A.*2d 865; *Faulhaber v. Twp. Comm.*, 274 *N.J.Super.* 83, 98–99, 643 *A.*2d 52 (Law Div.1994). That *Rule* states that publication of a notice in the official newspaper of the municipality or a newspaper of general circulation in the municipality is sufficient to trigger the accrual period. Under New Jersey zoning and land use rules, notice cannot merely discuss the resolution, but it also must advise that the resolution has been filed and is available for inspection. *R.* 4:69–6(b)(3). Here, although the article discusses the public question and prints it, it makes no mention of the Borough

resolution or how the public may inspect it. The court therefore holds that the newspaper article was not sufficient to put the Harrison BOE on notice of the resolution.

In the event the date of accrual is construed to run from the dates argued by East Newark, that is, May 14, 2014, or May 28, 2014, under *Rule* 4:69-6(c), the court is nonetheless authorized to "enlarge the period of time provided in . . . this rule where it is manifest that the interest of justice so requires." The *Rule* provides a clear and well-established exception to the rigid time limits of the prerogative writ rules in cases involving an important public, rather than private, interest requiring adjudication or clarification. *Borough of Princeton v. Mercer Cnty.*, 169 *N.J.* 135, 152–53, 777 *A.*2d 19 (2001); *Brunetti v. Borough of New Milford*, 68 *N.J.* 576, 586, 350 *A.*2d 19 (1975). In such cases, a trial court can grant even a substantial enlargement of time to allow parties the opportunity to challenge alleged unlawful conduct by the government. *Willoughby v. Planning Bd. of Deptford*, 306 *N.J.Super.* 266, 276, 703 *A.*2d 668 (App.Div.1997).

This case presents issues of significant public importance relating to the legality, under *N.J.S.A.* 19:37–1, of East Newark's efforts to place a referendum question on the ballot. Consequently, the court holds that, even if the forty-five day accrual period under *Rule* 4:69–6(a) has passed, this case presents issues of public interest significant enough to warrant an enlargement of the period under *Rule* 4:69–6(c).

### D.

Purportedly as a result of information obtained through answers to its interrogatories, the Harrison BOE seeks to submit an amended verified complaint, by which it proposes to challenge the validity of the nonbinding referendum's accompanying interpretive statement as invalid because it was not adopted by a resolution of the Council of East Newark. The Harrison BOE seeks to amend the complaint either as a matter of course under *Rule* 4:9–1 or, alternatively, by leave of the court. East Newark

counters that the amended complaint should be dismissed due to its untimely filing and futility, asserting that plaintiff was aware at the time the original verified complaint was filed that there was no resolution approving the interpretive statement.

Generally, the standard to amend a complaint is lenient. It requires that a copy of the proposed pleading be attached and the motion granted if it is in the interest of justice; it further provides that a party may amend any pleading as a matter of course at any time before a responsive pleading is served or "by written consent of the adverse party or by leave of court which shall be freely given in the interest of justice." *R.* 4:9-1. The comments to the *Rule* further explain that the broad power of amendment should be liberally exercised at any stage of the proceedings, including on remand after appeal, unless undue prejudice would result. *Zacharias v. Whatman PLC,* 345 *N.J.Super.* 218, 226, 784 *A.*2d 741 (App.Div.2001).

Nevertheless, an amendment remains a matter addressed to the court's sound discretion. *Kernan v. One Washington Park Urban Renewal,* 154 *N.J.* 437, 457, 713 *A.*2d 411 (1998). For example, an amendment should be denied when it is futile, that is, when it is clear that a subsequent motion to dismiss must be granted. *Mustilli v. Mustilli,* 287 *N.J.Super.* 605, 607, 671 *A.*2d 650 (Ch.Div.1995). A motion to amend also is properly denied where its merits are marginal and allowing the amendment would unduly protract the litigation. *See Stuchin v. Kasirer,* 237 *N.J.Super.* 604, 609, 568 *A.*2d 907 (App.Div.1990). If the proposed cause of action is "not sustainable as a matter of law," the court should refuse leave to amend. *Interchange State Bank v. Rinaldi,* 303 *N.J.Super.* 239, 256-57, 696 *A.*2d 744 (App.Div.1997).

This court concludes, as plaintiff conceded during oral argument, that plaintiff may not amend its complaint as of right because East Newark's motion to dismiss, which was denied on September 24, 2014, is a responsive pleading. That said, in the interests of justice and because defendants will not be unduly

prejudiced, plaintiff is granted leave to file its amended verified complaint challenging the interpretive statement.

### E.

All procedural issues having been addressed, the only remaining issues are the legality of the nonbinding referendum question and its interpretive statement.

The central issue relates to the division of power at the municipal level between the local governing body and the board of education. Plaintiff contends that the referendum question is patently invalid under *N.J.S.A.* 19:37–1. Plaintiff relies heavily on *Botkin v. Mayor & Borough Council of Borough of Westwood,* 52 *N.J.Super.* 416, 145 *A.*2d 618 (App.Div.), *appeal dismissed,* 28 *N.J.* 218, 146 *A.*2d 121 (1958), for the proposition that the East Newark Mayor and Council have no authority to submit a nonbinding referendum question relating to the internal affairs of the East Newark BOE, a separate and distinct governing body. In response, East Newark contends that it is entitled to judgment as a matter of law because: (1) *Botkin* involved a Type II district, completely autonomous from its local government, unlike the interdependent Type I district at issue here; (2) the defendant district in *Botkin* had no authority to act on the topic of the referendum at issue there, while the School Board of Estimate must act on the issue here; and (3) inclusion of the referendum on the ballot here will not inject politics into the affairs of the school district, as was the Appellate Division's concern in *Botkin.*

*N.J.S.A.* 19:37–1 provides, in pertinent part:

When the governing body of any municipality or of any county desires to ascertain the sentiment of the legal voters of the municipality or county upon any question or policy *pertaining to the government or internal affairs thereof,* and there is no other statute by which the sentiment can be ascertained by the submission of such question to a vote of the electors in the municipality or county at any election to be held therein, the governing body may adopt at any regular meeting an ordinance or a resolution requesting the clerk of the county to print upon the official ballots to be used at the next ensuing general election a certain proposition to be formulated and expressed in the ordinance or resolution in concise form.

(emphasis supplied).

In *Botkin, supra,* 52 *N.J.Super.* at 422, 145 *A*.2d 618, the defendant municipality sought to deconsolidate a consolidated school district. After concluding that legislation authorizing deconsolidation did not exist and was essential, it sought voter approval before proceeding. *Id.* at 430, 145 *A*.2d 618. Simultaneously, and critical to the resolution of the case, a borough council election was in process in which "deconsolidation" was a compelling issue. *Ibid.* In that context, the municipality requested a public question vote on whether it should seek legislation authorizing deconsolidation. *Id.* at 422, 145 *A*.2d 618.

The Appellate Division majority concluded that, for two reasons, the question was impermissible under the statute. First, the municipality had no power even to *seek* legislation concerning this subject. Invalidating the proposed referendum, the court noted that a "municipal governing body may only petition for such legislation regulating its internal affairs and not those of another governmental entity over which it has no power," *i.e.,* a Board of Education. *Id.* at 434, 145 *A*.2d 618. The court determined that, because of the autonomy of the local school board, a referendum on deconsolidation of the district was not valid because it was not a matter within the municipality's internal affairs, nor could the municipality exercise any control over it. *Ibid.* Second, the court concluded that placing the question on the ballot inevitably and improperly would inject municipal politics, by means of the forthcoming election, into the affairs of the consolidated board of education. *Id.* at 430-31, 145 *A*.2d 618. The dissent disagreed, concluding that the municipality had the power and a sufficient interest to warrant use of *N.J.S.A.* 19:37-1. *Id.* at 436, 145 *A*.2d 618.

East Newark contends that *Botkin* is inapplicable because it concerned a Chapter 7 (now known as a "Type II" district), while East Newark Board of Education is a former Chapter 6 (now known as a "Type I") district. Indeed, *Botkin* recognized that Type I school districts enjoyed "much less" freedom and autonomy

from the governing body. Nonetheless, *Botkin* stands steadfast for the proposition that school districts of whatever classification, although coterminous with the municipalities they serve, are separate, distinct, and free from control by the municipal governing body except to the extent the former education law provides. *Id.* at 425, 145 *A.*2d 618; *see also Gualano v. Bd. of Sch. Estimate of Elizabeth Sch. Dist.,* 39 *N.J.* 300, 303, 188 *A.*2d 569 (1963).

Despite recognizing the autonomy of school boards generally, subsequent case law makes clear that Type I school districts maintain certain areas of interdependence between the board and the governing body of the city. *See, e.g., N.J. State AFL–CIO v. Bergen Cnty. Bd. of Chosen Freeholders,* 121 *N.J.* 255, 579 *A.*2d 1231 (1990); *Hackensack Bd. of Educ. v. Hackensack,* 64 *N.J.Super.* 560, 165 *A.*2d 33 (App.Div.1960); *Bd. of Educ. of Union City v. Union City,* 112 *N.J.Super.* 493, 271 *A.*2d 733 (Law Div.1970); *Gamrin v. Mayor and Council of Englewood,* 76 *N.J.Super.* 555, 185 *A.*2d 55 (Law Div.1962). These cases all involved issues of fiscal responsibility, which are governed by a Board of School Estimate in Type I districts. As mandated by statute, a Board of School Estimate, which includes members from both the governing body of the municipality and the board of education, has the responsibility to determine necessary appropriations for use in public schools. *N.J.S.A.* 18A:22–14.

In *Gamrin, supra,* the Law Division upheld the validity of a referendum question proposed by the governing body that solicited voter sentiment concerning the transfer of certain school grades from their present schools into a single school. 76 *N.J.Super.* at 557, 185 *A.*2d 55. The court noted that although only a board of education initiative could effect such an action, that did not necessarily mean the governing body had no proper concern in the area. *Ibid.* Rather, the court acknowledged that, although "referendum questions must relate to action which the municipality has authority to take," funds for the proposed school reorganization required implementation by the Board of School Estimate. *Id.* at 557–58, 185 *A.*2d 55. Because members of the governing

body served on the Board of School Estimate, the court concluded that "the governing body is necessarily involved in a field of potential action if there is a preference for the proposal. The responsibility for taking a fiscal position subsists with the municipality[.]" *Id.* at 558, 185 *A.*2d 55.

The Harrison BOE attempts to downplay the impact of *Gamrin* by noting it is a Law Division case not binding on this court, and, even if it were, that *Gamrin* is bad law because it assumed, without citation, that the board of school estimate had statutory authority to act. Plaintiff, however, ignores the fact that the Board of School Estimate necessarily will have to act when setting the budget and making necessary appropriations, and therefore the matter is not one in which the Borough is powerless to act. Furthermore, *Gamrin* has been cited with approval by the Supreme Court. *See N.J. State AFL–CIO, supra,* 121 *N.J.* at 270, 579 *A.*2d 1231. There, the Court held the fact that, based on the vote on the public question, the governing body could effectively control the underlying subject matter by deciding whether or not to fund it, of necessity gave the Board of School Estimate total power to ask the referendum question. *Ibid.* Although the Court noted that it would not review the correctness of *Gamrin* because it was distinguishable, weight must be given to such extensive discussion.

East Newark is correct in noting that, in *Botkin,* the underlying issue was committed solely to the board of education, and the municipality had no power or interest over a referendum question concerning deconsolidation of students. By contrast, here, a decision to terminate the sending-receiving relationship would be a nullity if the Board of School Estimate refused to provide the funds needed to complete this process. Conceivably, a decision to continue the relationship with the Harrison BOE would be impossible if the Board of School Estimate refuses to provide the added funds needed to maintain it. Therefore, *Botkin* is properly interpreted not upon the basis of the division between its governing

bodies, but as a question of whether the municipality had the power to act on the question involved.[1]

East Newark is not seeking legislation outside the scope of its affairs; it merely seeks to determine its citizens' sentiments in respect of where its students attend high school, a factor that unquestionably will influence the appropriation determinations it makes when the Board of School Estimate next meets. Given its fiscal responsibilities, and the impact of the choice of high school on the budget, this issue clearly is one of fiscal importance to the Board of School Estimate and, by association, the municipality. East Newark has the authority not only to take action on the sending-receiving relationship within the scope of its budgetary responsibilities, but also to proffer the referendum related to it.

Because the nonbinding referendum question may proceed, whether the accompanying interpretive statement was properly submitted remains. The Harrison BOE argues that, because the interpretive statement was not approved by a resolution of the Borough Council, but rather prepared by the Borough Clerk in conjunction with the Borough attorney and submitted to the County Clerk, the East Newark Borough Clerk's actions were *ultra vires*. Plaintiff relies on *N.J.S.A.* 19:37-5, which provides that "[t]he submission of a public question in the manner herein provided shall not become operative in any municipality or county until the governing body thereof shall by ordinance or resolution

---

[1] Both the majority and dissent in *Botkin* agreed that the question was whether the power to lobby existed. As noted by the dissent, "[i]f [the governing body] has that primary right, then it seems to me the municipality has the incidental right to ask the opinion of its citizens by referendum, before spending its time (and possibly incurring expense) and the time of others in seeking the legislation." *Botkin, supra,* 52 *N.J.Super.* at 436, 145 *A.2d* 618 (Gaulkin, J.A.D., dissenting). *N.J. State AFL–CIO* further affirmed the principle that *Botkin* suggests: that "in some circumstances involving clearly identified local issues, the municipality, if it has the power to lobby the legislature, may use the public question method to determine whether or not to exercise that power." *N.J. State AFL–CIO, supra,* 121 *N.J.* at 273, 579 *A.2d* 1231. Although never reached on the merits, this principle sufficed to persuade three members of the Supreme Court of its correctness. *Botkin,* 28 *N.J.* at 219, 146 *A.2d* 121 (1958).

duly passed declare its desire to submit any question or questions in this manner." Plaintiff argues that, although the statute does not explicitly mention an interpretive statement, the Legislature reasonably could not have required that a public question be approved by resolution of the governing body and, at the same time, allowing an accompanying interpretive statement to be developed and submitted by a municipal employee. Consequently, it reasons, the interpretive statement should be invalidated. East Newark responds that no legislation exists requiring that an interpretive statement be approved by resolution, and thus the Borough Clerk acted properly.

The general election statute provides:

Any public question voted upon at an election shall be presented in simple language that can be easily understood by the voter. The printed phrasing of said question on the ballots shall clearly set forth the true purpose of the matter being voted upon. Where the question concerns any amendment to the State Constitution, or any act or statute or other legal titles of any nature, the printed phrasing on the ballots shall include a brief statement interpreting same. In event that in any statute the public question to be voted upon is so stated as not clearly to set forth the true purpose of the matter being voted upon and no provision is made in said statute for presenting the same in simple language or printing upon the ballots a brief statement interpreting the same, there may be added on the ballots to be used in voting upon the question, a brief statement interpreting the same and setting forth the true purpose of the matter being voted upon in addition to the statement of the public question required by the statute itself.

[*N.J.S.A.* 19:3-6.]

The reasoning is straightforward: because the public question here does not concern an amendment to the State Constitution or any statute, an interpretive statement was not required. The language allowing an interpretive statement is permissive; hence, the municipality need not include an interpretive statement unless the question is unclear or vague.

As a threshold matter, there is nothing vague or unclear about the public question at issue. Rather, the question—"Should East Newark High School students be sent to Kearny High School instead of Harrison High School?"—seems abundantly and, some may say, elegantly clear. As represented in oral argument, East Newark initially did not include an interpretive statement. Dur-

ing oral argument it was revealed that the interpretive statement was submitted by East Newark in response to a request by the Hudson County Clerk. Counsel for the Hudson County Clerk advised that, historically, the Clerk's Office has required interpretive statements for all submitted public questions. Counsel conceded that an interpretive statement was not necessary for this public question.

East Newark argues that, because the Borough Council did not supply an interpretive statement, the Borough Clerk was authorized to provide one. It relies on *Gormley v. Lan*, 88 *N.J.* 26, 36, 438 *A.*2d 519 (1981), which held that *N.J.S.A.* 19:3–6 authorizes an interpretive statement when the Legislature has not supplied one. However, East Newark fails to note that the legislation at issue in *Gormley* was a proposed constitutional amendment, which requires, rather than permits, an interpretive statement. Thus, as later noted by the Appellate Division,

[b]ecause of the absence of such a legislatively-imposed interpretative statement, the Attorney General exercised what the *[Gormley ]* Court characterized as the Attorney General's "broad responsibilities to evaluate matters of public policy and to take action he deems necessary to preserve the public good," and drafted an interpretive statement to inform the voters of the effect of the proposed constitutional amendment that had been placed on the ballot.

[*McKenzie v. Corzine*, 396 *N.J.Super.* 405, 417, 934 *A.*2d 651 (App.Div.2007) (quoting *Gormley, supra,* 88 *N.J.* at 43, 438 *A.*2d 519).]

*Gormley* is distinguishable because (a) the public question at issue required an interpretive statement, and (b) the Attorney General had the power to supply one where the Legislature failed to adopt one. Here, in contrast, an interpretive statement is not required because there is no statute or constitutional amendment at issue. An interpretive statement is not even needed because the language of the public question is painstakingly clear. Furthermore, in cases involving public questions in the permissive category, the interpretive statements were passed together with the public question. *See McKenzie, supra,* 396 *N.J.Super.* at 410, 934 *A.*2d 651; *City of N. Wildwood v. N. Wildwood Taxpayers' Ass'n,* 338 *N.J.Super.* 155, 159, 768 *A.*2d 262 (Law Div.2000); *Camden Cnty. Bd. of Chosen Freeholders v. Keating,* 193 *N.J.Su-*

*per.* 100, 103, 472 *A.*2d 178 (Law Div.) *aff'd,* 193 *N.J.Super.* 111, 472 *A.*2d 184 (App.Div.1983). Thus, this court holds that the Borough Clerk acted improperly in submitting an interpretive statement without a resolution by the Borough Council; the interpretive statement is invalid and the public question is to proceed standing alone.

## IV.

For the foregoing reasons, East Newark's motion for summary judgment is granted; Harrison BOE's cross-motion for summary judgment seeking to remove the nonbinding referendum question from the ballot is denied; and plaintiff's motion to invalidate the interpretive statement is granted.